STATE EX REL. BELL, and others, Plaintiffs-Appellants, v. COUNTY COURT FOR COLUMBIA COUNTY, and others, Defendants-Respondents.

*No. 77–379. Argued February 7, 1978.—Decided March 7, 1978.*
(Also reported in 263 N.W.2d 162.)

402

For the appellants there was a brief by *John P. Koberstein* and *Voss, Nesson, Koberstein, Erbach & Voss, S. C.* and oral argument by *John P. Koberstein,* all of Madison.

For the respondents the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. This appeal raises two issues:

1. Does the information fail to charge the defendants with a violation of sec. 161.41(1)(b), Stats.?

2. Was there sufficient evidence presented at the preliminary hearing to establish probable cause to believe that the defendants committed this crime?

*Sufficiency of the Information*

The information charged that the defendants were:

". . . feloniously, unlawfully, knowingly and intentionally manufacturing, as defined by Section 161.01(13) of the Wisconsin Statutes, a controlled substance, namely, methamphetamine, which is included as a controlled substance in Schedule II of Section 161.16(5)(b) of the Wisconsin Statutes; contrary to Section 161.41(1)(b) & 939.05, Wisconsin Statutes . . . ."

The defendants challenge the sufficiency of the information on the grounds that it fails to charge a statutory crime.

The defendants are charged with "manufacturing" a controlled substance, methamphetamine, contrary to sec. 161.41(1)(b), Stats. This section provides:

"161.41 Prohibited acts A—penalties. (1) Except as authorized by this chapter, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:
"...
"(b) Any other controlled substance classified in schedule I, II or III, may be fined not more than $15,000 or imprisoned not more than 5 years or both; . . ."

The term "manufacture" is defined by sec. 161.01(13), Stats., as follows:

"(13) *'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and in-*

*cludes any packaging or repackaging of the substance or labeling or relabeling of its container,* except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use or the preparation, compounding, packaging or labeling of a controlled substance:

"(a) By a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

"(b) By a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale." (Emphasis supplied.)

A controlled substance is a drug, substance or immediate precursor listed in secs. 161.14, 161.16, 161.18, 161.20 and 161.22, Stats. Sec. 161.01 (4), Stats. "Immediate precursor" means

"a substance which the controlled substances board has found to be and by rule designates as being the principal compound commonly used or produced primarily for use, and which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is necessary to prevent, curtail or limit manufacture." Sec. 161.01 (12), Stats.

Methamphetamine is one of the many enumerated controlled substances, and is listed in Schedule II. Sec. 161.-16 (5) (b), Stats. The state concedes that the controlled substances board has not designated by rule an immediate precursor of methamphetamine.

The defendants claim that the information does not charge them with a violation of sec. 161.41, Stats. They contend that in order for the actions of a person to be considered a violation of this section, the actions must culminate in the creation of the controlled substance or its designated immediate precursor, and that in the instant case, because there is no immediate precursor,

methamphetamine itself must exist before a charge for the violation of the prohibition against its manufacture will lie. We do not agree. The statutory language does not require the existence of the controlled substance created through an accused's activities to constitute a violation of the prohibition of controlled substance manufacture. This is manifestly shown when the other sections of the Uniform Controlled Substances Act are reviewed. The statutory definition of manufacturing refers to *acts* which will result in the creation of a controlled substance, and thus includes "the production, preparation, propagation, compounding, conversion or processing" of such substances. Sec. 161.01(3). Thus, as its title indicates, sec. 161.41 prohibits the *act* of manufacture. Possession of the substance created by prohibited means is not a requirement of this section as it would be for those other sections dealing specifically with possession. *See,* secs. 161.41(1m), (2r) and (3), Stats. Obviously, the legislative intent in enacting sec. 161.41(1) was to prevent, curtail or limit the manufacture of controlled substances. It was not to duplicate sections dealing specifically with possession violations.

The defendants claim that if the statute is read to mean that the ultimate creation and possession of the controlled substance is not a requirement to the violation of this section, persons such as themselves would not "know how they are to defend themselves and against what they are to defend themselves." Hypothetically, they ask:

"If being in the process of manufacturing a controlled substance is a crime, when is that crime completed? Is the crime committed when [the defendants] purchase aluminum foil which might be part of manufacturing a controlled substance? Or purchasing hydrochloric acid, 55-gallon drum[s] [sic], refrigerators, leasing a building?"

Because of the brevity of their argument, it is difficult to determine whether the defendants are challenging the

statute with which they are charged as unconstitutionally vague. But even if the statute is so tested, we think that it is constitutionally sufficient. It is a fundamental constitutional principle that procedural due process requires a fair notice and proper standards for adjudication. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 33 L. Ed.2d 222 (1972); *State v. Courtney*, 74 Wis.2d 705, 709, 247 N.W.2d 714 (1976). Although a statute may not be "so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited by the statute" (*State v. Woodington*, 31 Wis.2d 151, 181, 142 N.W.2d 810, 143 N.W.2d 753 (1966)), the statute need not, with absolute clarity and precision, draw a line between lawful and unlawful conduct. *State v. Courtney, supra* at 710. "A fair degree of definiteness is all that is required." *Ministers Life & Casualty Union v. Haase*, 30 Wis.2d 339, 362, 141 N.W.2d 287 (1966), *appeal dismissed* 385 U.S. 205.

"Before a statute or rule may be invalidated for vagueness, there must appear some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared, or such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the statute. . . ." *State v. Courtney, supra* at 711.

A statute is not unconstitutionally vague merely because an element of the statutory prohibition poses a factual issue which must be proven beyond a reasonable doubt. *See, State ex rel. Bena v. Hon. John J. Crosetto*, 73 Wis. 2d 261, 271–72, 243 N.W.2d 442 (1976). Therefore, we conclude that the statute making it illegal for a person to manufacture a controlled substance is not unconstitutionally vague.

Consequently, the defendants' contention that the information is jurisdictionally defective in that it charges the defendants with manufacturing, rather than with having manufactured a controlled substance is without merit. Although the statute uses the word "manufacture" while the information used the word "manufacturing," such a variance is not fatal to the sufficiency of the information. "[T]here is no requirement the information in order to charge a crime must be in the language of the statute." *Huebner v. State*, 33 Wis.2d 505, 514, 147 N.W. 2d 646 (1967). This is particularly true when the information contains a citation to the statutory section alleged to have been violated, for the reference "necessarily carrie[s] with it all of the elements of the offense charged under that section." *Brown v. State*, 73 Wis.2d 703, 707, 245 N.W.2d 670 (1976). *See also, Schleiss v. State*, 71 Wis.2d 733, 738, 239 N.W.2d 68 (1976).

Therefore, we are satisfied that the information filed in this case is not defective and that the trial court was not without jurisdiction.

### Probable Cause

We note that the defendants' argument with respect to this issue is made in terms of their position on the first issue, namely that there can be no violation of sec. 161.-41(1)(b), Stats. unless it is shown that the defendants had manufactured—*i.e.*, had achieved the results of the act of manufacture—the controlled substance. Here, no methamphetamine was found on the premises where the defendants were arrested. Nevertheless, because we hold that this is not the meaning of the statute, and that the statute prohibits the act of manufacture itself, the futility of the defendants' arguments concerning the sufficiency of the evidence adduced at the preliminary hearing to support a finding of probable cause is immediately apparent.

The defendants were arrested in and about a farm house in Columbia County which contained several rooms. The arresting officers entered the house through an attached basement garage, where they found a large centrifuge in operation, two tubs of white crystalline powder being dried by heat lamps, various 55-gallon drums and three refrigerators. In one of the rooms on the first floor, the officers found a series of paper shredders which were shredding aluminum foil, and ten to fifteen empty aluminum foil boxes. The second floor of the house was divided into four bedrooms. In one bedroom, which was equipped with a sink, various chemical bottles, glassware and "separatory" funnels were found; in a second, rheostat controlled heating lamps and water supplied condensors were found; in a third, a white crystalline powder spread over a large table was found drying by the heat of a portable space heater; and in the final room, large round-bottom flasks, two of which contained shredded aluminum foil, were found. The officers also discovered formula-like calculations written on the walls of the upstairs hallway.

Sanford Angelos, a forensic chemist with the Drug Enforcement Administration of the United States Department of Justice, testified that field tests, and subsequent laboratory tests, conducted on a substance in a jug found on the second floor indicated that the substance was phenyl-2-propanone. Angelos characterized phenyl-2-propanone as a "precursor" of the controlled substance methamphetamine and stated that although no methamphetamine was found in the house, the premises contained all of the substances and equipment necessary for one method of producing methamphetamine. Furthermore, he testified that the substances found in the house were one step away from the actual production of crude methamphetamine.

"The mixture of P-2-P with methylamine, aluminum foil, mercuric chloride in the funnels, let that react, and

it would have produced methamphetamine. Your wash-up procedure could be considered another step, but that's a wash-up to get clear oil, and you also have, if you want to call it a step, but you can convert that oil to a solid. So I'd say it's one step . . . ."

The defendant, Terry John Wilson, was arrested as he drove up to the farm house in a pickup truck bearing three 55-gallon drums which were labeled as containing sulfuric acid. Wilson had been observed coming and going from the house on an earlier occasion. Robert Bell was found sleeping in one of the bedrooms and was arrested on the premises. Theron Pitcher was discovered in another room and was arrested after he broke out a window with a chair and dove through the broken window.

We conclude that there was sufficient competent evidence to permit the magistrate to conclude that within the realm of reasonable probability a violation of sec. 161.41 (1) (b) had been committed and that the defendants had committed it. *Vigil v. State,* 76 Wis.2d 133, 141, 250 N.W.2d 378 (1977) ; *Taylor v. State,* 55 Wis.2d 168, 173, 197 N.W.2d 805 (1972).

*By the Court.*—Order affirmed and cause remanded for trial.