GOVERNMENT OF the CANAL ZONE, Plaintiff-Appellee,

v.

Charles Christopher HODGES, Alex Rene Melo Y. (Young), Manuel Moreno M. (Murillo), Defendants-Appellants.

No. 78–5200.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1979.

James J. O'Connor, New Orleans, La. (Court-appointed), Alex Rene Melo Y. (Young), pro se, Manuel Moreno M. (Murillo), pro se, for defendants-appellants.

Frank J. Violanti, U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before WISDOM, COLEMAN and RONEY, Circuit Judges.

PER CURIAM:

The defendants-appellants and two other defendants (who did not appeal) were convicted in a 1978 bench trial of breaking and entering the Cocoli Diesel Plant in the Canal Zone with larcenous intent in violation of section 502, title 6, of the Canal Zone Code. On appeal they contend that there was a fatal variance between the bill of information and the trial court's findings of fact, that their joint representation by a

single attorney violated their right to effective assistance of counsel, and that the government's evidence was insufficient to support the verdict. We affirm.

The Cocoli Diesel Plant is an abandoned facility owned by the Canal Zone government. The Canal Zone Property Disposal Division uses parts from the plant's machinery to equip and repair similar machinery elsewhere. The plant is enclosed by a fence, and the gates are kept padlocked. Mr. Lenhoff of the Property Disposal Division, whose task it was to keep an eye on the premises, visiting the Plant one day in January 1978, found the gates open and the padlock missing. Lenhoff testified that upon approaching the building he observed what appeared to be a person moving behind the building. Lenhoff called the police, who searched the building and found the five defendants hiding in the Plant's basement recesses. The Plant, according to Lenhoff, was "a mess": machines were disassembled, parts and motors were lying about, and electrical or hydraulic lines to the machines had been cut. The defendants, when found, were covered with grease and dirt. They were charged with breaking and entering with larcenous intent.

The five defendants were tried together without a jury. The public defender represented all five throughout the trial. They were found guilty.

The appellants contend that the district court's findings of fact vary significantly from the bill of information. The information stated that the defendants entered the plant "with intent then and there to commit the crime of larceny therein (violation of 6 CZC § 502–404)". In his findings, the trial judge stated that the defendants had entered the building with intent "to commit *a felony or larceny*" (emphasis added). He went on to say that "each of the defendants has been proven guilty by the Government beyond and to the exclusion of every reasonable doubt of the crime charged in the Information". The defendants contend that the Information gave them no notice that they were to be tried for entering the Plant with felonious intent, inasmuch as it charged them only with entering with larcenous intent. They also argue that the district court's use of the disjunctive—"to commit a felony or larceny"—raises a question whether the trial court found either felonious or larcenous intent beyond a reasonable doubt.

Neither contention has merit. A bill of information need not specify the elements of intent in terms; it suffices if the bill sets forth the section number of the statute that the defendants allegedly violated. *E. g., United States v. Arteaga-Limones,* 5 Cir. 1976, 529 F.2d 1183, 1200. The information in this case charged a violation of section 502. Because that section speaks of entering "with intent to commit grand or petit larceny, or a felony", it was permissible to try the appellants on a theory of general felonious intent. Nor is there any question that the court found them guilty beyond a reasonable doubt. Any contrary inference that might arise from the court's use of the disjunctive is destroyed by the court's statement in its findings of fact that the defendants were proved guilty "beyond and to the exclusion of every reasonable doubt of the crime charged in the Information".

We reject also the argument that the defendants' sixth amendment rights were violated by the public defender's joint representation. Joint representation by appointed counsel is not a per se violation of the sixth amendment. *Foxworth v. Wainwright,* 5 Cir. 1975, 516 F.2d 1072. A trial court may be under an affirmative duty to inquire into the adequacy of joint representation of criminal defendants when defense counsel suggests to the court that there may be a conflict of interest disabling him from vigorous and effective representation of all. *Holloway v. Arkansas,* 1978, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426. "Absent", however, "some notice that the right to effective counsel could be jeopardized by joint representation, the Court does not bear the responsibility of informing co-defendants of possible problems of joint representation." *United States v. Boudreaux,* 5 Cir. 1974, 502 F.2d 557, 558.

The appellants' counsel did not suggest to the court that a conflict of interest might have existed. Nor does it appear to this Court that the situation was such that the trial court should have investigated on its own motion. From start to finish the defendants presented a united front: all used the alibi that they entered the plant in innocent pursuit of an iguana.[1] This was an entirely reasonable trial strategy. There is no suggestion of a persuasive alternative strategy that was denied the defendants as a result of the joint representation.[2] We therefore find no sixth amendment violation under the *Boudreaux* standard. We reject, too, the contention that the performance of their appointed trial counsel was so abysmal as to amount to ineffective assistance for sixth amendment purposes.

Finally, having examined the evidence in the light most favorable to the Government, as we must, *United States v. Moore*, 5 Cir. 1974, 505 F.2d 620, 623, we find it adequate to support the verdicts.

The judgments are AFFIRMED.

---

1. After Hodges testified regarding the reasons for his presence in the building when caught, the other four defendants authorized their attorney to adopt Hodges' testimony. Their attorney declared: "Your Honor, with the specific acquiescence of the four other defendants who would declare to the Court and reiterate that testimony, the defense rests". This tends to negate any suggestion that there existed a conflict of interest.

2. The appellants point out that defendant Nunez, who might have had a colorable "knowing spectator" defense, might have benefited from separate representation. Nunez, however, is not a party to this appeal.