THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES PHELAN *et al.*, Defendants-Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RONALD RUDICH, Defendant-Appellee.

First District (2nd Division)    Nos. 80-2194, 80-2654

Opinion filed September 1, 1981.—Rehearing denied September 22, 1981.

---

Richard M. Daley, of Chicago (Michael Shabat and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Edward B. Arnolds and Gus P. Giannis, both of Chicago (Michael P. Seng, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants James Phelan and Brian Bowes together were charged with two counts of delivery of a controlled substance, cocaine (Ill. Rev. Stat. 1979, ch. 56½, pars. 1401(a)(2), (b)). Phelan individually was charged with one count each of delivery and possession of cocaine (Ill. Rev. Stat.

1979, ch. 56½, pars. 1401(b), 1402(b)); Bowes individually was charged with the possession offense. In a separate action, defendant Ronald Rudich was charged with a single count of possession of cocaine (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)). (Phelan, Bowes, and Rudich are hereafter collectively referred to as "defendants.")

Defendants filed motions to dismiss the charges on several grounds.[1] In both actions, the circuit court found that the substance cocaine was not controlled under the applicable statute, and the term "cocaine" refers to several different chemical and molecular structures. As a consequence, the court ordered all charges in both actions dismissed. The State appeals; we consolidated the appeals because of the identity of the issues.[2] On appeal, the State argues that the circuit court's orders were erroneous.

The relevant procedural aspects of this case have already been set forth above. On April 7, 1980, a hearing was held in the Phelan-Bowes case on those defendants' motion to dismiss. At the hearing, the testimony of two expert witnesses was presented.

Dr. Richard Joel Miller, Ph.D., an assistant professor of pharmacology and physiological science, was called by defendants. Miller described the attributes of those substances classified as narcotics, and then described the attributes of non-narcotic stimulants. Miller described opium and opiates, heroin, and morphine as types of narcotic drugs. He stated that cocaine, specifically the "1" isomer, was "not a narcotic without any scientific doubt whatsoever * * *." Miller described the differences between cocaine and narcotics.

Miller was also questioned as to the isomers of cocaine. He stated that cocaine was known to have both an "1" and a "d" isomer. The former isomer is the one found in the natural coca leaf. The isomers have an identical chemical formula but a different molecular structure. Miller stated that some diastereoisomers of cocaine would still be referred to as being "cocaine" although they did not have any psychoreal effect on a person.

On cross-examination, Miller related that "1" cocaine certainly occurred in nature, but he was unsure of whether "d" cocaine did. The latter substance's effect on a person was not known to him.

The State called Debora Ann Juricic, forensic scientist for the Illinois Department of Law Enforcement. She was read a segment of schedule II

---

[1] In addition to the grounds upon which the circuit court relied, defendants also alleged that (1) cocaine is misclassified as a narcotic when it is actually a nonnarcotic stimulant, and that penalties for delivery of cocaine are thus unconstitutional; (2) the disparity in sentencing depending on the amount of a "substance containing cocaine" is unconstitutional for failing to be based upon the amount of cocaine involved; (3) the Class X sentencing statute is unconstitutional; and (4) the possession statute is unconstitutional. The court did not address these issues.

[2] Defendant Rudich neither filed an appellee's brief nor was represented by counsel at oral argument. We consider his case nonetheless.

of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1206(b)(4)).[3] Juricic stated that that segment defined cocaine, specifically the "l" isomer. She stated that the drug "d" cocaine had never been synthesized. Asked whether the provision read to her described any other isomers of cocaine, Juricic responded that such isomers (actually diastereoisomers) were not found by her "in the first place."

On cross-examination, Juricic admitted that a ralemic, that is, mixture of both "l" and "d" cocaine, had been synthesized. She stated that separation of the mixtures had never been done. Pure "d" cocaine had never been synthesized without producing "l" cocaine at the same time. Juricic did not know if "d" cocaine was psychoactive. She also noted that there were four known diastereoisomers each for "d" and "l" cocaine.

On redirect, Juricic stated that her tests could determine whether the substance under examination was a derivative of a coca leaf or was a chemical equivalent. On recross, she repeated that "d" cocaine was not an extract of the coca leaf, although it has the same formula as "l" cocaine and is known as "cocaine."

After taking the motion to dismiss under advisement, the circuit court found that "cocaine was not a controlled substance—had been removed from the applicable statutes by a recent revision." The court reasoned that the charges also failed to apprise the accused of the crimes committed because the accused should not need to have "someone get out a dictionary or call in someone with a chemical knowledge or go to some other source to learn what a substance is."

The court specifically relied upon its decision in *People v. Simon* (*reversed* (1980), 91 Ill. App. 3d 667, 416 N.E.2d 285), and ordered dismissal of the indictment against defendants Phelan and Bowes. In a separate hearing at which no witnesses were presented, the court took similar action with regard to the information charging defendant Rudich.

I

The State contends that the circuit court's dismissal orders were based upon erroneous underlying findings, in that (A) the substance known as cocaine remains controlled under the relevant statute, and (B) use of the term "cocaine" in a charging instrument together with reference to a specific statutory provision is sufficiently specific to charge an

---

[3] The segment reads:

"Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, of preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves, which extractions do not contain cocaine or ecgonine."

offense. Our disposition of this appeal allows us to combine both of the State's contentions in a single *ratio decidendi*.[4]

## A.

■■ We begin with an examination of the requisites for a valid charging instrument. Here, the sufficiency of the pleadings was attacked by way of pretrial motions. Consequently, a determination must be made whether the instruments comply with section 111—3 of the Code of Criminal Procedures of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3), which requires that the charges be in writing, state the name of the offense, cite the relevant statutory provisions, set forth the elements of the offense, and state the time and place of the crime and name of the accused. (See *Simon*, 91 Ill. App. 3d 667, 669; *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 648, 378 N.E.2d 1200.) In making this determination, this court must keep in mind the purpose of a charging instrument, which is to inform the accused of the nature of the charges against him so as to enable him to prepare a defense, and to allow any subsequent judgment flowing therefrom to be used as a bar to further prosecution for the same conduct. (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 834, 382 N.E.2d 800, *appeal denied* (1979), 72 Ill. 2d 583, *cert. denied* (1979), 444 U.S. 925, 62 L. Ed. 2d 180, 100 S. Ct. 262.) We are wary of roadblocks raised by pure technicalities; yet, we strictly guard the substantive rights of the accused. (See *People v. Suarez* (1975), 33 Ill. App. 3d 689, 693, 338 N.E.2d 419.) If the requirements of section 111—3 are sufficiently set forth to achieve the purpose of the charging instrument, that pleading will be upheld. See *People v. Bissaillon* (1977), 55 Ill. App. 3d 893, 894-95, 371 N.E.2d 362.

## B.

Our examination of the various counts of the indictment and information in these cases leads us to a preliminary conclusion that these instruments on their face meet the requirements of section 111—3. However, our inquiry does not end there, since the essence of the motions to dismiss filed below was that the instrument failed to achieve their purpose despite their facial adherence to the statute's requisites. The basis for the motions of defendants, relied upon by the circuit court in dismissing the charges, was that the use of the term "cocaine" therein did not adequately apprise the accused of the crimes with which they were charged. Defendants' theory relied upon the testimony of the expert witnesses at the hearing. Those witnesses related that, at least in the scientific community, the word "cocaine" refers to any substance having

---

[4] We note that defense counsel argued both points together in his summary of the motions to the circuit court.

the chemical formula $C_{17}H_{21}NO_4$. The experts also noted that there are several isomers of this chemical formula which are known. The relevant statutory provision upon which the charging instrument was based (see footnote 3) describes only one of these isomers, " 'l' cocaine." From this testimony, defendants reason that use of the broad term "cocaine" in the indictment or information did not sufficiently distinguish between the substance which is controlled, "l" cocaine, and the other isomers of $C_{17}H_{21}NO_4$, which are not controlled. Consequently, in theory the pleadings here could have charged defendants with acts which are not crimes. Thus, their reasoning goes, the charges must be dismissed.

We reject this analysis, skillfully crafted though it is. As noted, the pleadings charge defendants with various crimes involving the allegedly controlled substance "cocaine." We recognize that, in the minds of the expert witnesses who testified at the hearing, this term refers to several independent substances (that is, isomers) which all have the same chemical formula. We agree with the experts that the statute, as presently structured, controls only one of these isomers, "l" cocaine. This does not, however, require us to conclude that use of the term "cocaine" in the pleadings was overbroad and vague.

■■ In testing the validity of language used in a charging instrument, our concern is whether such terminology enables a person of common understanding to know what the instrument intended. Thus, the scientific community's own understanding of language such as the word "cocaine" is not directly relevant to our inquiry and is certainly not controlling upon the question of the sufficiency of a pleading. Rather, our concern is with the meaning of the term "cocaine" in the common parlance.

We find the following definitions of the term to be relevant: (1) "A bitter crystalline alkaloid $C_{17}H_{21}NO_4$ *obtained from coca leaves* * * *" (Emphasis added.) (Webster's Third New International Dictionary 434 (1976)); (2) "A white crystalline narcotic alkaloid *extracted from coca leaves.*" (Emphasis added.) (Black's Law Dictionary 233 (5th Ed. 1979).)[5] In light of these definitions, we believe that the pleadings in these cases informed defendants that they were charged with commission of various offenses involving a substance derived from the coca leaf, referred to as "cocaine."

■■ Further examination of the pleadings elicits citations to the various statutory provisions which defendants allegedly violated. (Ill. Rev. Stat. 1979, ch. 56½, pars. 1401(a)(2), (b); 1402(b).) As a general rule, a pleading is to be read as a whole and, where a statute is cited therein, that statute and the charge are to be read together. (*People v. Simon* (1980), 91 Ill. App. 3d 667, 669.) Upon reading each of the statutory provisions cited in

---

[5] We note that some courts have taken judicial notice that cocaine is a coca leaf derivative. See *United States v. Lange* (E.D. Wis. 1976), 422 F. Supp. 400, 402.

the pleadings in these cases, defendants would be led to the schedules of controlled substances contained in article II of the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1979, ch. 56½, art. II.) In those schedules, the only references related to "cocaine" within the ambit of defendants' presumed common understanding of that term is found in schedule II, and includes only coca leaves and preparations therefrom. (Ill. Rev. Stat. 1979, ch. 56½, par. 1206(b)(4); see footnote 3.) As stated by the expert witness at the hearing, that provision encompasses only "1" cocaine, which is the only isomer of $C_{17}H_{21}NO_4$ controlled by law. Therefore, we believe that a person of common understanding, upon reading the pleadings in conjunction with the statutes recited therein, would be apprised of exactly what crime with which he was charged: a crime involving the substance "1" cocaine, known to him simply as "cocaine." He could consequently prepare an adequate defense to those charges and plead any resulting judgment as a bar to further prosecution for the actions underlying the pleadings. Thus, we conclude that the present charging instruments comply with the law as to their sufficiency. The circuit court erred in ruling to the contrary.

■■ For the same reasons, the circuit court erred in holding that the statute no longer included "cocaine" as a controlled substance. We recognize that the term itself was deleted from schedule II. However, the language which remains defines one of the isomers of $C_{17}H_{21}NO_4$, "1" cocaine, which in street language is known simply as cocaine. Thus, to a person of common understanding, the terminology of the pleadings here refers to a substance which certainly remains controlled by law, though it is described therein in more precise language than the average person might use. Nonetheless, whether called "1" cocaine by chemists or "cocaine" by defendants, the substance remains controlled under current Illinois law. The circuit court erred in ruling otherwise.

## II

In their appellee's brief, defendants also argue that cocaine is not a narcotic and that punishment of manufacture or delivery of cocaine as if it were is unconstitutional.

■■ We note that our supreme court has recently heard oral argument in the case of *People v. McCarty* (1981), 93 Ill. App. 3d 898, 418 N.E.2d 26, in which the Fourth District of this court ruled contrary to precedent and in conformance with defendants' assertion here. (Supreme Court Docket No. 54745.) We believe that as a consequence, our examination of this question would serve no purpose, since the supreme court's disposition of *McCarty* will control the issue in any event. Additionally, we note that whatever the outcome, it will affect only the sentencing of defendants and would not preclude their trials and convictions for the offenses. Therefore, we decline to address this matter.

We note that defendants raised three other points in their dismissal motions below. (See footnote 1.) The circuit court did not rule upon the merits of any of these grounds for dismissal. On appeal, none of the parties either briefed or argued the points. It would be inappropriate for this court to address the merits of those claims at this time.

For the foregoing reasons, we reverse the judgments of the circuit court of Cook County, and remand the cases for proceedings consistent with our findings.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.