Joel L. SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 82–821.

District of Columbia Court of Appeals.

Argued June 8, 1983.

Decided Aug. 31, 1983.

---

B.R. Hicks, Springfield, Va., for appellant.

Patricia A. Broderick, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher, and Ronald Dixon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. David E. Sellinger, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before PRYOR and BELSON, Associate Judges, and YEAGLEY, Associate Judge, Retired.

## PER CURIAM:

Having been convicted by a jury of assault with intent to commit mayhem, D.C. Code § 22–502 (1981), appellant asserts that the indictment was fatally defective and that the evidence was insufficient to convict. Lastly, he urges that newly discovered evidence proffered by him warranted a new trial. Finding these contentions to be unpersuasive, we affirm.

On a June evening in 1981, appellant watched from his car as complainant, John Ferrentino, entered the passenger side of a vehicle driven by Anna Davis, a woman with whom appellant had been romantically involved. Appellant followed closely in his own vehicle and blinked his lights signaling Ms. Davis to stop. When instead of stopping she accelerated her vehicle, appel-

lant pursued the vehicle through the streets of Northwest Washington for about twenty minutes. After Davis parked her car on a parking lot in Georgetown, appellant approached her on foot and suggested that the two of them have a brief talk. Ferrentino stood back out of hearing range. When the conversation grew heated, Davis stepped away from appellant and rejoined Ferrentino. In turn, they started to walk to a nearby social club. As they were walking, appellant drove abreast of them in his car and shouted threats and epithets at Davis. After a short interval Ferrentino indicated to appellant that he wanted to have a word with him. Leaving a small child in his vehicle, appellant exited his car, walked over to the complainant, and stated, "I have got one thing to say to you ..."; without saying anything more, appellant struck Ferrentino a crushing blow on the jaw with his fist and then continued to strike him repeatedly around the face and head. During the course of this beating, appellant was heard to comment that "when he got through ... Anna wouldn't look twice at [the complainant]".

Bloody and semiconscious, complainant was driven to the hospital by Ms. Davis where he was admitted for treatment. In all, he suffered a broken jaw, a shattered eyetooth, other missing teeth, a lacerated chin, and bruises on the face.

At trial, appellant claimed self-defense and asserted that Ferrentino had put a dent in his car by kicking it.

I

▮ Before addressing the specific contentions raised by appellant, we observe that in this jurisdiction, the sanctions prescribed for the offenses of mayhem and malicious disfigurement are contained in a single statutory section, D.C.Code § 22–506 (1981).[1] As to the former, we have consistently held that common law mayhem was traditionally viewed as a crime against the

King and was therefore limited to injuries which deprived a fighting man of the use of one of his limbs or some part of his body which affected his ability or willingness to engage in combat. More recently we have recognized that although the proof necessary to convict remains essentially the same, a modern view of the statute relates more to the preservation of the normal functioning of the human body. *Perkins v. United States,* 446 A.2d 19, 24 (D.C.1982); *McFadden v. United States,* 395 A.2d 14, 18 (D.C.1978); *United States v. Cook,* 149 U.S. App.D.C. 197, 199, 462 F.2d 301, 303 (1972). On the other hand, the proscription against malicious disfigurement focuses upon willful permanent disfigurement rather than disablement. *Perkins v. United States, supra.* With these differences in mind, we turn to this case.

The indictment alleged:

On or about June 18, 1981, within the District of Columbia, Joel L. Smith assaulted John J. Ferrentino with intent to maim and maliciously disfigure him. (Assault with intent to commit mayhem, in violation of 22 D.C.Code, Section 502).

Appellant, reasoning that under District of Columbia law there is no such crime as assault with "intent to maim and maliciously disfigure," initially urges that the indictment therefore was fatally deficient and should have been dismissed pursuant to his post-trial motion.

▮ In the context of modern pleading, the indictment or other charging document must assert a plain and concise statement of an alleged offense sufficient to put the accused on notice of the nature of the offense charged. *See* Super.Ct.Crim.R. 7(c). To survive a challenge on this ground, the indictment must satisfy two constitutional mandates: (1) it must sufficiently apprise the defendant of the nature and cause of the accusations against him in order that he can prepare his defense, and (2) it must

---

1. D.C.Code § 22–506 (1981) reads in pertinent part:

Every person convicted of mayhem or of maliciously disfiguring another shall be imprisoned for not more than 10 years.

clearly specify the time and place of the crime so that a claim of double jeopardy may be determined in the event of future prosecutions. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *Nichols v. United States,* 343 A.2d 336, 340 (D.C.1975). It follows, of course, that an indictment need not echo the language of the charging statute. *Nichols v. United States, supra,* 343 A.2d 342; *Tatum v. United States,* 71 App.D.C. 393, 110 F.2d 555 (1940).

 Despite appellant's protestations that the word "maim" does not appear in the statute, we think it is beyond argument that the charge with the parenthetical reference to the specific statute on which the prosecution was based, apprised appellant of the nature of the accusation against him in a manner which would preclude a future prosecution against him based on the same averments.

 In a similar vein, appellant urges that his motion for judgment of acquittal should have been granted because of the government's failure to introduce sufficient evidence of his specific intent to commit mayhem. Again harking back to the historic meaning attributable to mayhem, appellant contends that the evidence of his intent was deficient.

We disagree. Even at common law, mayhem, in addition to the loss of a limb, included those injuries which weakened a person's combative fortitude. Moreover, the gravamen of the offense, as we have shown, has been expanded to include the willful destruction of the normal functions of the human body. *United States v. Cook, supra,* 149 U.S.App.D.C. at 199, 462 F.2d at 303.

In this instance there were ample circumstances from which the jury could infer the requisite intent. To begin with, appellant's encounter with Davis and Ferrentino was not casual in nature; rather his conduct reflected a deliberate and sustained effort to provoke a confrontation. The jury was entitled to consider the ferocity of the attack, the injuries sustained, and lastly, appellant's own comments while assaulting the complainant. *See also Logan v. United States,* 460 A.2d 34, 36 (D.C.1983). Remarkably, while appellant acknowledges that knocking out a foretooth would constitute mayhem, he argues that the jury could not infer his intent to commit mayhem on the basis of an assault in which he actually knocked out the tooth next to the foretooth, the eyetooth. Taken together, these circumstances, when considered against the familiar standard of sufficiency, provide adequate evidence from which a jury could find guilt beyond a reasonable doubt. *Franey v. United States,* 382 A.2d 1019, 1022–23 (D.C.1978); *Calhoun v. United States,* 369 A.2d 605, 606–07 (D.C.1977). Finally, we note that the court's instructions to the jury required them to address the issue of specific intent and to weigh the evidence in that regard.

## II

Appellant's last contention pertains to his unsuccessful attempt to gain a new trial. In support of his request he offered the affidavit of a woman, a visitor to the city, who observed the incident. Although the statement lends support to the assertion that complainant kicked appellant's car, it also corroborates much of the government's evidence of the assault.

 Absent a clear showing of abuse of discretion, decisions of the trial court regarding the denial of a new trial will not be disturbed on appeal. *United States v. Johnson,* 327 U.S. 106, 111–12, 66 S.Ct. 464, 466–67, 90 L.Ed. 562 (1946); *Strickland v. United States,* 389 A.2d 1325, 1327 (D.C. 1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979); *Heard v. United States,* 245 A.2d 125, 126 (D.C.1968). In the exercise of its discretion, the trial court must consider (1) whether the evidence was discovered since the trial; (2) whether the party seeking the new trial has demonstrated diligence in its effort to procure the newly discovered evidence; (3) whether the

evidence is merely cumulative or impeaching; (4) whether the evidence is material to the issues involved; and (5) whether the evidence is of such a nature that an acquittal would likely result from its use. *Id.* at 126.

In resolving this question the trial court did not question appellant's diligence in discovering the witness but concluded that the proffered testimony was cumulative in nature and not likely to produce a different verdict. It is readily apparent that the court committed no abuse of discretion in denying the request for a new trial.

*Affirmed.*