STATE of Maine

v.

Ira B. HUNTLEY, Jr.

Supreme Judicial Court of Maine.

Argued Nov. 22, 1983.

Decided March 6, 1984.

David M. Cox, Dist. Atty., Michael Roberts (orally), Gary F. Thorne, Asst. Dist. Attys., Bangor, for plaintiff.

Twitchell, Linscott & Badger, P.A., Orman G. Twitchell (orally), Bangor, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE, GLASSMAN, and SCOLNIK, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

Appellant, State of Maine, pursuant to M.R.Crim.P. 37 and 15 M.R.S.A. § 2115–A(2) (1980), appeals a decision rendered by the Superior Court, Penobscot County, reversing appellee's convictions obtained in the District Court, Division of Southern Penobscot, of two counts of furnishing or trafficking in drug paraphernalia in violation of subsection (5) of the Maine Drug Paraphernalia Act. 17–A M.R.S.A. § 1111–A (1983). The Superior Court justice found that the complaint was defective as to both counts because neither count alleged an essential element of the crime charged that the items sold or possessed by appellee were used or intended by appellee to be used in connection with scheduled drugs.[1] We affirm.

## I.

Appellee owned and operated a store named the Looking Glass in Bangor. The store offered various items for sale such as rolling papers, tobacco, "roach clips," "cocaine folders," mirrors, pipe bowls and assorted pipes. During the early afternoon of April 30, 1982, appellee sold a new soapstone pipe to an undercover police officer. Later that afternoon, the officer returned to the store with other officers from the Bangor Police Department and arrested appellee for the sale of drug paraphernalia. The officers also seized the store's inventory.

On May 6, 1982, appellee pleaded not guilty to the original one count complaint charging him with trafficking in or furnishing drug paraphernalia. After appellee filed several pre-trial motions, the State was granted leave to file an amended complaint, which it did on July 8, 1982. The amended complaint consisted of two counts and charged as follows:

> [Count I] [T]hat on or about April 30, 1982, in the city of Bangor, Penobscot County, Maine, the [Defendant Ira B. Huntley, Jr.] did: traffick in or furnish drug paraphernalia, to wit, did sell a soapstone pipe to Bruce Buchanan, knowing, or under circumstances where he reasonably should have known that it would be used to plant, propagate, cultivate,

---

1. "Scheduled drugs" are those drugs listed in 17–A M.R.S.A. § 1102 (1983), and assigned to different schedules under section 1102 for the purposes of defining drug-related crimes and the penalties therefor.

grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of Chapter 45, Title 17–A M.R.S.A. or Title 22 Section 2383. Count II—[T]hat on or about April 30, 1982, in the County of Penobscot, State of Maine, IRA B. HUNTLEY, JR. did traffick in or furnish drug paraphernalia, to wit, did possess with the intent to sell, barter, trade, exchange or otherwise furnish for consideration, drug paraphernalia as defined in 17–A M.R.S.A., 1111–A 1 (A–KII–13) [sic], knowing or under circumstances where he reasonably should have known that it would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of Chapter 45, Title 17–A M.R.S.A. or Title 22, Section 2383.

Prior to trial, appellee motioned the District Court to dismiss the amended complaint on the ground that neither count properly apprised him of the charges lodged against him. The court denied appellee's motion to dismiss and, after trial, found him guilty on both counts. Appellee appealed the convictions to the Superior Court pursuant to M.D.C.Crim.R. 37. The Superior Court found both counts of the complaint deficient, reversed the convictions and remanded to the District Court for proper entry of judgment. The State timely appealed this decision.

## II.

■ In a criminal prosecution in Maine, a defendant has the right to be advised in writing of the nature and the cause of the accusation against him. Me. Const. art. I, § 6. We have indicated repeatedly that a charging instrument must set out on its face every essential element of the crime charged. *State v. Pierce,* 438 A.2d 247, 250, 255 (Me.1981); *State v. Blais,* 391 A.2d 1198, 1201 (Me.1978); *State v. Smith,* 277 A.2d 481, 484 (Me.1971); *State v. Ward,* 156 Me. 59, 62, 158 A.2d 869, 871 (1960); *State v. Beckwith,* 135 Me. 423, 426, 198 A. 739, 741 (1938); *State v. Crouse,* 117 Me. 363, 364, 104 A. 525, 526 (1918). The omission of one element of the offense from the charging instrument renders the instrument void, "taints any judicial action thereon with inherent nullity [and] deprives the court of jurisdiction to proceed with the prosecution, [to] effect a valid conviction or [to] impose a lawful sentence." *Blais,* 391 A.2d at 1201; *State v. Davenport,* 326 A.2d 1, 9 (Me.1974). A charging instrument also must contain such plain, concise and definite allegations of the essential facts as will apprise a defendant of reasonable and normal intelligence of the charges against him so that he can prepare a defense and protect himself from twice being put in jeopardy for the same offense. *State v. Snow,* 464 A.2d 958, 961 (Me.1983); *State v. Coleman,* 452 A.2d 397, 399 (Me.1982); M.R. Crim.P. 7(c); M.D.C.Crim.R. 3(a).

■ In the instant case, appellee was convicted of two counts of trafficking in or furnishing drug paraphernalia in violation of 17–A M.R.S.A. § 1111–A(5) (1983).[2] Count I concerned appellee's sale of the soapstone pipe to the undercover police officer. Count II concerned appellee's possession of the items seized from his store. The elements of the crimes charged in each count consist of the following:

> contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.
> Violation of subsection (5) as charged in the present case is a Class E crime. 17–A M.R.S.A. § 1111–A(8) (1983).

**2.** 17–A M.R.S.A. § 1111–A(5) (1983) states:
It is unlawful for any person to traffick in or furnish drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store,

(1) The trafficking[3] in or furnishing[4] of

(2) equipment, products and materials of any kind

(3) used or intended for use[5] in connection with scheduled drugs[6]

**3.** 17–A M.R.S.A. § 1101(17) (1983) defines "traffick" as follows:
"Traffick:"
A. To make, create, manufacture;
B. To grow or cultivate, except with respect to marihuana;
C. To sell, barter, trade, exchange or otherwise furnish for consideration; or
D. To possess with the intent to do any act mentioned in Paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing.

**4.** 17–A M.R.S.A. § 1101(18) (1983) defines "furnish" as follows:
"Furnish:"
A. To furnish, give, dispense, administer, prescribe, deliver or otherwise transfer to another;
B. To possess with the intent to do any act mentioned in Paragraph A.

**5.** The "intent" relevant to this element of the crime charged is the intent of the defendant owner or seller of the equipment, products or materials of any kind. *Stoianoff v. Montana*, 695 F.2d 1214, 1220 (9th Cir.1983); *New England Accessories Trade Association, Inc. v. Tierney*, 691 F.2d 35, 36 (1st Cir.1982); *Levas and Levas v. Village of Antioch*, 684 F.2d 446, 452–53 (7th Cir.1982); *Tobacco Accessories and Novelty Craftsman Merchants Association of Louisiana v. Treen*, 681 F.2d 378, 383 (5th Cir.1982); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1219 (11th Cir.1982); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1366–67 (10th Cir.1981); *Casbah, Inc. v. Thone*, 651 F.2d 551, 559 (8th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 928–29 (6th Cir.1980), *vacated*, 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289, 292–93 (D.Del.1980); *Opinion of the Justices*, 121 N.H. 542, 545, 431 A.2d 152, 154 (1981); *State v. Murphy*, 674 P.2d 1220, at 1223 (Utah 1983).

**6.** Elements (2) and (3), as they are designated here, of the crimes charged in both Count I and Count II comprise the statutory definition of "drug paraphernalia." Under the statute, "drug paraphernalia" means

all equipment, products and materials of any kind which *are used or intended for use* in planting, propagating, cultivating, growing,

(4) knowing, or under circumstances where one reasonably should know that the drug paraphernalia will be used in connection with scheduled drugs.

harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.

17–A M.R.S.A. § 1111–A(1) (1983) (emphasis added). By statute, 17–A M.R.S.A. § 1111–A(3) (1983), a court should consider the following factors, in addition to all other logically relevant factors, in determining whether an item is drug paraphernalia, i.e., whether it is used or intended for use with scheduled drugs:
A. Statements by an owner or by anyone in control of the object concerning its use;
B. Prior convictions, if any, of an owner or of anyone in control of the object, under any state or federal law relating to any scheduled drug;
C. The proximity of the object, in time and space, to a direct violation of this chapter;
D. The proximity of the object to scheduled drugs;
E. The existence of any residue of scheduled drugs on the object;
F. Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use as drug paraphernalia;
G. Instructions, oral or written, provided with the object concerning its use;
H. Descriptive materials accompanying the object which explain or depict its use;
I. National and local advertising concerning its use;
J. The manner in which the object is displayed for sale;
K. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
L. Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;
M. The existence and scope of legitimate uses for the object in the community; and
N. Expert testimony concerning its use.

The State does not dispute that the essential elements of both counts include appellee's intent that the items he possessed and sold be used in connection with scheduled drugs and appellee's knowledge or reason to know that the items would be used with illegal drugs. Indeed, it is the intent and knowledge of a person such as appellee as to the use or intended use that distinguishes trafficking or furnishing drug paraphernalia from legally selling innocuous materials for personal use. *See* cases cited at note 5, *supra.*

### III.

To obtain a conviction on Count I, the State was required to prove beyond a reasonable doubt, as to appellee's state of mind, that he sold the soapstone pipe to the undercover police officer with the intent that it be used in connection with scheduled drugs and that appellee knew or reasonably should have known that the pipe would be used with illegal drugs. Count I, however, alleges only that appellee knew or reasonably should have known of future illegal use of the pipe. It failed to allege that appellee intended the pipe to be used in an illegal manner. As such, Count I failed to allege all the essential elements of the crime charged and was, therefore, void. *Blais,* 391 A.2d at 1201; *Davenport,* 326 A.2d at 9. The Superior Court properly reversed appellee's conviction on this count.

To obtain a conviction on Count II, the State was required to prove beyond a reasonable doubt, as to appellee's state of mind, that he possessed the seized items with the intent to sell them, that he intended the seized items be used with scheduled drugs and that he knew or reasonably should have known that the items would be used in connection with illegal drugs.

Count II clearly alleges that appellee possessed items with the intent to sell them and that he knew or reasonably should have known that the items would be used in connection with scheduled drugs. Count II does not allege that appellee intended the items he possessed be used in connection with such drugs. Count II does allege, however, that appellee trafficked in or furnished "drug paraphernalia as defined in 17–A M.R.S.A., § 1111–A 1(A–KII–13) [sic]." As stated in 17–A M.R.S.A. § 1111–A(1), the definition of "drug paraphernalia" includes those items a seller or possessor intends to be used in connection with illegal drugs. *See* notes 5 and 6, *supra,* and cases cited therein. The question then becomes whether the reference in the complaint to the section of the Maine statutes that provides an essential element of the crime charged in Count II meets the constitutional requirement that appellee be advised on the face of the complaint, of each element of the crime of trafficking in or furnishing drug paraphernalia.[7] *Pierce,* 438 A.2d at 255. We hold that it does not.

### IV.

We reject any argument that it is proper in a complaint for the State to plead an element of a charged offense merely by citing the statute that provides the missing element. We perceive this ruling to be consistent with the rights guaranteed a criminal defendant by article I, § 6 of the Maine Constitution.[8] "Carried to its logical

---

7. We note that the citation in Count II to the statute in which "drug paraphernalia" is defined, is stated incorrectly. This fact, however, in and of itself does not dictate the result in the present case since an improper statutory reference in a complaint does not render the complaint invalid unless it misleads a defendant to his prejudice. *State v. Bryce,* 243 A.2d 726, 732 (Me.1968); M.R.Crim.P. 7(c); M.D.C. Crim.R. 3(a).

8. We also consider this view to be consistent with a majority of the courts that have ruled on

this issue. *United States v. Jones,* 647 F.2d 696, 699 (6th Cir.1981); *United States v. Camp,* 541 F.2d 737, 740–41 (8th Cir.1976); *United States v. Wabaunsee,* 528 F.2d 1, 4 (7th Cir. 1975); *United States v. Berlin,* 472 F.2d 1002, 1008 (2d Cir.), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973); *United States v. Roach,* 321 F.2d 1, 3 (3d Cir.1963); *Robinson v. United States,* 263 F.2d 911, 912 (10th Cir.1959); *Ayre v. State,* 291 Md. 155, 167–68, 433 A.2d 1150, 1158 (1981); *State v. Cook,* 272 N.C. 728, 731, 158 S.E.2d 820, 822

conclusion, [this] argument would suggest that *no* essential element of an offense need be alleged in an indictment as long as the statute is cited." *United States v. Wabaunsee,* 528 F.2d 1, 4 (7th Cir.1975) (emphasis in original).[9] If the mere citation to the statute were sufficient, the constitutional requirement that a charging instrument contain all the elements of the offense charged, would be vitiated. Moreover, in view of M.R.Crim.P. 7(c) and M.D.C.Crim.R. 3(a), which state that an error in citation to a statute contained in a charging instrument is not per se reversible error when the sufficiency of the instrument is challenged, we believe that it would be unfair to require defendants to rely on a statutory citation to supply them with an essential element of the crime charged. *Accord State v. Tuua,* 649 P.2d 1180, 1187 (Hawaii Ct.App.1982).

The entry must be:

Judgment affirmed.

NICHOLS and GLASSMAN, JJ., and DUFRESNE, A.R.J., concurring.

SCOLNIK, Justice, with whom McKUSICK, Chief Justice, joins, concurring in part and dissenting in part.

I concur with the majority as to Count I of the indictment, but I must dissent as to Count II.

Rule 7(c) of the Maine Rules of Criminal Procedure provides that an "indictment or

... information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It was adopted in order to simplify criminal pleading, to reduce the ornate complexity of pleading at common law. M.R.Crim.P. 7 reporter's notes. There is no mechanical test for determining the sufficiency of an indictment, but our appraisal must be governed by practical rather than technical considerations. 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 7.11 at 82 (1967) (citing *Duke v. United States,* 233 F.2d 897 (5th Cir.1956)).

This Court has long adhered to the principle that an indictment is sufficient if a respondent of reasonable and normal intelligence would, by the language of the indictment, be apprised of the crime charged and the nature thereof. *State v. Crocker,* 435 A.2d 58, 68 (Me.1981); *State v. Wing,* 426 A.2d 1375, 1376 (Me.1981); *State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963). However, "[t]his longstanding rule must be applied in view of the indictment's purpose," *State v. Allison,* 427 A.2d 471, 473 (Me.1981), which is to avoid unfair surprise, to aid the respondent in preparing an adequate defense, and to protect him from further jeopardy. *State v. Myrick,* 436 A.2d 379, 381 (Me.1981); *Allison,* 427 A.2d at 473. To this end, it is essential that an indictment or other charging instrument be con-

---

(1968); *Wilder v. Commonwealth,* 217 Va. 145, 148, 225 S.E.2d 411, 413 (1976); *State v. Tuua,* 649 P.2d 1180, 1187 (Hawaii Ct.App.1982); *People v. Miles,* 96 Ill.App.3d 721, 726, 52 Ill. Dec. 324, 328, 422 N.E.2d 5, 9 (1981); *Commonwealth v. Walters,* 250 Pa.Super. 392, 394, 378 A.2d 993, 994 (1977). We acknowledge the view expressed by the dissenting opinion that some courts have held that a statutory reference in a charging instrument necessarily carries with it all the elements of the charged offense for the purpose of protecting a criminal defendant's right to be fairly apprised of the charge against him, *Government of the Canal Zone v. Hodges,* 589 F.2d 207, 209 (5th Cir. 1979); *Smith v. United States,* 466 A.2d 429, 432 (D.C.1983); *State v. Crenshaw,* 274 S.C. 475, 477, 266 S.E.2d 61, 62 (1980); *State ex rel. Bell v. County Court for Columbia County,* 82 Wis.2d 401, 408, 263 N.W.2d 162, 166 (1978); *People v. Phelan,* 99 Ill.App.3d 925, 930–31, 55

Ill.Dec. 600, 604, 426 N.E.2d 925, 929 (1981), but we reject such a rule as being inconsistent with the rights of a criminal defendant in Maine.

**9.** *Accord United States v. Camp,* 541 F.2d 737, 740 (8th Cir.1976) ("Surely no one could assert that an indictment that merely charged that a defendant violated a cited statute would suffice as an indictment."); *Ayre v. State,* 291 Md. 155, 168, 433 A.2d 1150, 1158 (1981) ("It takes little imagination to foresee that the State's contention, if accepted, would obviate the necessity of alleging *any* material element of the offense, for any distinction which might be drawn between supplying a crucial element by citation of the statute and supplying all essential allegations in this manner is so fine as to be well-nigh invisible") (emphasis in original).

strued in a common sense manner, and not be subjected to arbitrary, artificial, or hypertechnical requirements. *State v. Carter,* 444 A.2d 37, 39 (Me.1982); Glassman, *supra,* § 7.11 at 82.

Prior to the adoption of Rule 7(c), the requirements for criminal pleading were much stricter in Maine. In *Haller v. State,* we held it to be "a cardinal rule of criminal pleading that all of the essential elements of the crime sought to be charged must be alleged, and that the description of the offense must be certain, positive, and complete, and not by way of recital, argument, intendment, implication, or inference." 241 A.2d 607, 609 (Me.1968).[1] In *State v. Warner,* decided prior to *Haller* but involving an early application of Rule 7(c), we reviewed an indictment charging the defendant with reckless homicide, but which omitted the requisite allegation that the victim had died within a year of the precipitating cause. We held that, because the date of the initial accident had been January 1, 1966, and the indictment, stating that the victim had died, was dated February 2, 1966, the defendant could infer the information necessary to complete the indictment. 237 A.2d 150, 156 (Me.1967).

In *State v. Martin,* we said that a charging instrument is sufficient "if all essential elements of the offense are charged *by necessary intendment or implication,*" 387 A.2d 592, 593 (Me.1978) (emphasis in original), and in *State v. Carter* we observed that "[t]he constitutional provisions applicable to charging instruments ... look to the substance of the charge rather than to niceties

of form." 444 A.2d at 39. These principles are echoed in *State v. Pierce,* relied upon by the majority, in which we held that "[t]he language of the formal accusation must be such that the identity of the criminal statute allegedly violated may be readily ascertained; compliance with this constitutional requirement is not achieved if the indictment does not aver all the essential elements of the crime charged ... explicitly *or by the use of equivalent terms.*" 438 A.2d 247, 255 (Me.1981) (emphasis added).

In light of the purpose for which Rule 7(c) was adopted, I fail to see how the statutory reference in Count II of the indictment is fatal under Maine law. It acts only as a trailblazer, leading the respondent directly to statutory language which gives him a full explication of the element charged. This position is supported in a number of other jurisdictions, and reflects, in my view, a more rational interpretation of the requirements of post-common law pleading. *See, e.g., Government of Canal Zone v. Hodges,* 589 F.2d 207, 209 (5th Cir.1979); *Smith v. United States,* 466 A.2d 429, 432 (D.C.1983); *People v. Phelan,* 99 Ill.App.3d 925, 930–31, 55 Ill.Dec. 600, 604, 426 N.E.2d 925, 929 (1981); *State v. Crenshaw,* 274 S.C. 475, 266 S.E.2d 61, 62 (1980); *State ex rel. Bell v. County Court for Columbia County,* 82 Wis.2d 401, 408, 263 N.W.2d 162, 166 (1978).

This Court has shown no aversion, in the past, to directing criminal defendants to statutory language offering greater information as to the offense charged.[2] Rule

---

1. *Haller* was decided after adoption of Rule 7(c), but concerned an indictment returned prior to the adoption of that rule. Glassman, *supra,* § 7.8 at 10–11 (Supp.1975).

2. In *State v. Coleman,* the defendant was charged with burglary, but the indictment failed to specify the class of the offense. While such is not required in an indictment, the Court nevertheless referred the defendant to the statute so as to determine for himself, "by a process of elimination," the class of burglary for which he was charged. 452 A.2d 397, 399 (Me.1982). In *State v. Martin,* the defendant was charged with OUI, but the Uniform Traffic Ticket and Complaint failed to allege that he

was operating a motor vehicle, an essential element. We held this element to be implied, but stated, "[m]oreover, had defendant consulted the statute itself, he could only have been assisted and not misled as to the identity of the charged offense." 387 A.2d 592, 594 (Me. 1978). Similarly, in *State v. Carter,* a defendant was charged with OUI but the charging instrument referred only to "liquor," rather than "intoxicating liquor." We held the word "intoxicating" to be implied, given the common and everyday meaning of "liquor," but went on to say that "[i]f there were any remaining doubt in the matter, the traffic ticket on its face referred defendant to 29 M.R.S.A. § 1312.

7(c) itself requires that "[t]he indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated." This requirement is viewed as "another means of providing notice to the defendant . . . ." M.R.Crim.P. 7 reporter's notes. A charging instrument is not defective when it uses words or terms of art, such as "intent," "traffick," or "scheduled drug," for which resort to the Code is necessary for a full explanation.[3] The Code itself is replete with internal cross-references, which, however crucial to an adequate defense, pose no discernible threat to the constitutional principles addressed by the majority.

The majority suggests that, because an error in citation to a statute in the charging instrument is not per se reversible error, it would be unfair to supply defendants with notice of an essential element simply by statutory reference. This ignores the underlying premise of post-common law pleading. Rule 7(c) states that "[e]rror in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment or information or for reversal of a conviction *if the error or omission did not mislead the defendant to his prejudice.*" (emphasis added).[4] The question is not whether incorporation by statutory reference is insufficient per se, but whether a respondent of reasonable and normal intelligence would, by the language of the indictment, be able to determine the nature of the offense charged.

Count II of the indictment at issue does not rely on a bare statutory reference, but instead refers to "drug paraphernalia as defined in" the specific statutory subsection. Using practical rather than technical considerations, this language is clearly adequate to apprise the defendant of the crime with which he was charged. This indictment does not subject a defendant of reasonable and normal intelligence to unfair surprise, nor does it deprive him of the ability to prepare an adequate defense or fail to protect him from further jeopardy. The statutory reference here was clear, and by simply opening the Code this defendant would have been fully apprised of the elements of the alleged offense. The indictment is in accord with the practical requirements of Rule 7(c), and I would therefore reverse the decision of the Superior Court as it relates to Count II.

---

Even the briefest perusal of that statute reveals that it is concerned with intoxicating liquor and blood-alcohol tests." 444 A.2d 37, 39 (Me. 1982). In *State v. Myrick,* we held that a defendant was placed on notice of certain aspects of the offense charged by the "mere existence" of a related statutory provision not mentioned in the indictment. 436 A.2d 379, 382 (Me.1981).

**3.** *See, e.g.,* 17–A M.R.S.A. § 2 (defining "act", "deadly force," "armed with a dangerous weapon," "dwelling place," "firearm", "intentionally," "knowingly," "recklessly", etc.); 17–A M.R.S.A. § 251 (defining "spouse," "sexual intercourse," "compulsion," etc.); 17–A M.R.S.A. § 352 (defining "property," "property of another," "intent to deprive," etc.); 17–A M.R.S.A. § 701 (defining "falsely utters," "falsely completes," "written instrument," etc.); 17–A M.R.S.A. § 851 (defining "prostitution," "engages a prostitute," "promotes prostitution," etc.); 17–A M.R.S.A. § 952 (defining "bookmaking," "gambling," "player," etc.); and 17–A M.R.S.A. § 1101 (defining "marijuana," "scheduled drug," "traffick," etc.).

**4.** To the extent that the portion of the statutory reference ". . . (A–KII–13)" is deemed a miscitation, it is not misleading, since the portion of the statute which was correctly cited contains the element of intent which the majority maintains should have been explicitly set forth in Count II of the indictment.