**STATE of Maine**

v.

**Timothy COLEMAN.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1982.

Decided Nov. 17, 1982.

**398** ■

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), Bangor, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The defendant, Timothy Coleman, was convicted of burglary, Class C, 17–A M.R.S.A. § 401 (1981), and theft, Class C, 17–A M.R.S.A. §§ 353, 362 (1981), following a jury trial in Superior Court, Penobscot County. On appeal, the defendant raises two issues: (1) the sufficiency of the indictment and (2) the sufficiency of the evidence. We affirm the convictions.

Between 1:20 and 1:30 a.m. on September 2, 1981, David Stevens, a night worker for the New England Telephone Company at 59 Park Street in Bangor, left the building "to catch a little air." He entered a partially enclosed upper parking lot where he saw a white automobile with a person sitting in the middle of the front seat. Moments later, Mr. Stevens heard rustling in the woods located in the sunken alleyway between the parking lot and The Waterworks, a waterbed shop at 53 Park Street, the building adjacent to the telephone company. Believing that someone was trying to enter the telephone company annex, Mr. Stevens opened the door and "hollered to the guard to call the cops." After the guard came out of the building to tell Mr. Stevens that he had telephoned the police, "the car leapt to life and tore off."

At this time, Mr. Stevens again noticed the "thrashing noise" in the alleyway and followed the "rustling sound" as it "shuffled" its way toward the telephone company building. As the noise approached the end of the alleyway, Officers Falvey and Colley of the Bangor Police Department appeared on the scene. The police arrived approximately three and a half minutes after the guard had telephoned them.

Officer Falvey also heard the sounds in the alleyway and soon afterwards he saw two blond men, one of whom was taller than the other, run out of the alley, down the embankment, and across the lower parking lot. Officer Falvey saw Officer Winslow apprehend the smaller man and Officer Butler capture the taller man. Officer Winslow later testified that he had arrested Gregory Coleman, the defendant's brother and Officer Butler stated that he had arrested the defendant, Timothy Coleman.

Subsequently, Officer Falvey discovered a package of waterbed sheets in the upper parking lot. The officer then jumped from the upper parking lot into the alleyway where he found waterbed sheets, linen, heaters, and various waterbed equipment. At approximately 2:30 or 3:00 a.m., George Moran, a co-owner of The Waterworks, arrived and identified the items as his inventory.

Upon entering The Waterworks, Mr. Moran found that the back window next to the alleyway was pushed in and that some of his waterbed inventory was missing, including sheets and comforters. In addition, a dozen or more waterbed mattress boxes normally kept in the cellar had been moved upstairs next to the window. Mattresses and heaters were strewn all over the showroom. Before leaving, Mr. Moran and his wife inventoried some of the items and secured the windows.

At 9:00 a.m. that same morning, Mr. Moran returned to The Waterworks to conduct an inventory. Mr. Moran counted the number of items on hand while co-owner, Steven Hammann, recorded the results. This inventory reflected that the total cost of the missing items was $2,126.00.

I. *Sufficiency of the Indictment*

On September 8, 1981, the Grand Jury indicted Timothy Coleman. The indictment charged:

That on or about the 2nd day of September, 1981, in the County of Penobscot, State of Maine, TIMOTHY COLEMAN did enter a structure of George Moran and Stephen Hammann knowing he was

not licensed or privileged to do so, with the intent to commit theft therein.

AND THE GRAND JURY FURTHER CHARGES:

That on or about the 2nd day of September, 1981, in the County of Penobscot, State of Maine, TIMOTHY COLEMAN did obtain or exercise unauthorized control over the property of George Moran and Stephen Hammann, to wit, personal property of a value in excess of $1,000.00, with the intent to deprive said George Moran and Stephen Hammann thereof.

The defendant argues that the indictment was insufficient for failure to specify the location of the alleged burglarized building and for omitting to classify the burglary.

The defendant raises the sufficiency of the indictment for the first time on appeal. We consider the constitutional sufficiency of an indictment as a jurisdictional matter. *State v. Pierce,* 438 A.2d 247, 256 (Me.1981). A court may act upon jurisdictional matters at any time during the pendency of the proceeding. M.R. Crim.P. 12(b)(2); *see State v. Davenport,* 326 A.2d 1, 9 (Me.1974).

An indictment must inform a reasonably and normally intelligent defendant of the charges (1) to enable him to prepare a defense and, if convicted, (2) to protect him from double jeopardy. *State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963). To enable a defendant to prepare a defense, the indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." M.R.Crim.P. 7(c). The constitution requires that an indictment allege every material fact that forms the essential elements of the charged crime. *See Pierce,* 438 A.2d at 255; *State v. Myrick,* 436 A.2d 379, 381 (Me.1981) (quoting *State v. Allison,* 427 A.2d 471, 473 (Me. 1981)). The elements of the crime of burglary consist of a person's (1) entering or surreptitiously remaining in a structure, (2) knowing that he is neither licensed nor privileged to be in the structure, and (3) intending to commit a crime therein. 17–A M.R.S.A. § 401(1). The exact location of

the structure is not an element of the crime of burglary. Consequently, to pass constitutional muster, the indictment need not contain such information. If the defendant required further specification, he could have moved for a bill of particulars. M.R. Crim.P. 16(c)(2). Although the availability of a bill of particulars will not save a defective indictment, *Pierce,* 438 A.2d at 256, the bill may be used to clarify a constitutionally sufficient yet non-specific indictment.

The defendant argues that the holding in *Pierce* requires that the indictment specify the class of burglary. *Pierce* does not require that result here, however, in view of the structure of the statute defining the offense of burglary. In *Pierce,* the Court invalidated an indictment for failure to specify the type of gross sexual misconduct, 17–A M.R.S.A. § 253 (1980). *Id.* at 255–56. Section 253 describes the various acts that constitute Class A, B, and C gross sexual misconduct. The burglary statute, 17–A M.R.S.A. § 401, however, only describes the conduct which constitutes Class A and B burglary. Section 401 provides that a Class C burglary is "all other burglary." Unlike a defendant charged with gross sexual misconduct, a defendant charged with burglary could determine the class of the burglary by a process of elimination. Because the indictment did not allege that the defendant was armed, a Class A crime under section 401, or that the defendant inflicted bodily harm during the burglary, a Class B crime under section 401, a reasonably intelligent defendant could have concluded that he was charged with a Class C crime.

Under the recent case of *State v. Hebert,* 448 A.2d 322 (Me.1982), the indictment in this case is also sufficient to protect the defendant against double jeopardy, if convicted. In *Hebert,* we held that "when a defendant is placed in jeopardy under a valid indictment, he or she may not thereafter be placed in jeopardy for *any offense* of which he properly could have been convicted under the indictment." *Id.* at 326. A conviction under the broad indictment in this case would prohibit the State from

trying the defendant on a new indictment for a burglary of any "structure of George Moran and Stephen Hammann" or for a different class of burglary.

## II. *Sufficiency of the Evidence*

■ When considering a challenge to a conviction on the basis of insufficiency of the evidence, we must view the evidence in a light most favorable to the State. *State v. Sanborn,* Me., 440 A.2d 1056, 1057 (1982). "[T]he Law Court will set aside the conviction if no trier of fact could rationally find proof of guilt beyond a reasonable doubt, any doubts about the correctness of the determination of factual questions being resolved in favor of the verdict." *Id.; State v. Lagasse,* 410 A.2d 537, 542 (Me.1980). Circumstantial evidence is not inferior to direct evidence. *State v. LeClair,* 425 A.2d 182, 184 (Me.1981); *State v. O'Donnell,* 131 Me. 294, 296, 161 A. 802, 803 (1932). We find that sufficient evidence exists to support the convictions of burglary and theft.

The entry is: Judgment affirmed.

All concurring.