STATE of Maine

v.

Lawrence P. MAHONEY.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1983.

Decided April 26, 1983.

---

Henry N. Berry, III, Dist. Atty., Jeffrey Albanese, Asst. Dist. Atty. (orally), Portland, for plaintiff.

Lawrence P. Mahoney, pro se (orally), Saco, for defendant.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

After a trial in Superior Court (Penobscot County), a jury found the defendant guilty of Forgery, 17–A M.R.S.A. § 703 (1983), Class D, and Theft, 17–A M.R.S.A. § 353 (1983), Class B. The defendant appeals on the following bases: (1) insufficiency of the indictment; (2) improper denial of motion for acquittal and improper reduction of charge against defendant; (3) improper denial of motion for mistrial; (4) improper denial of motion for a new trial; and (5) improper jury instructions. We deny the appeal.

### Facts and Procedure

A grand jury (Cumberland County) indicted the defendant for Aggravated Forgery, 17–A M.R.S.A. § 702, Class B, and Theft, 17–A M.R.S.A. § 353, Class B. The indictment read:

COUNT I:

That on or about the Thirteenth day of November, 1979, in the City of Portland, County of Cumberland, and State of Maine, the above named defendant, LAWRENCE P. MAHONEY did, with the intent to deceive Kristine Wright, knowingly utter or possess a falsely endorsed written instrument, namely, a check made by Providence Washington Insurance Group, payable to the order of Kristine Wright and Lawrence P. Mahoney as her attorney, dated November 7, 1979, in an amount exceeding Five Thousand Dollars ($5,000), namely, Eighteen Thousand Dollars ($18,000), purportedly endorsed by Kristine Wright.

COUNT II:

That on or about the Twentieth day of November, 1979, in the County of Cumberland, and State of Maine, the above named defendant LAWRENCE P. MAHONEY did exercise unauthorized control over the property of Kristine Wright, namely, money having a value of Twelve Thousand Dollars, ($12,000), with the intent to deprive the said Kristine Wright thereof.

The indictment was signed by the foreman of the grand jury but was dated October 18, 1980, two days after the docket entry date of October 16, 1980.

At a hearing before trial, the defendant challenged the indictment as defective and moved orally to dismiss the charges. The defendant argued that the October 18 date on the indictment proved that it had not been signed before the grand jury rose, as required by M.R.Crim.P., Rule 6(f) and that a copy of the allegedly forged instrument was not attached to the indictment, as required by Maine case law. At the hearing, the justice denied the motion to dismiss, noting that the later date was only a clerical error and that the failure to attach a copy of the instrument was not a fatal defect. The justice did permit the defendant to file a motion for arrest of judgment. That motion and motions for judgment of acquittal, new trial, and discovery were heard after the trial.

After a change of venue from Cumberland County to Penobscot County was ordered, the trial began on November 2, 1981. The jury could have found the following facts. Attorney Feller and the defendant represented Plaintiff Kristine Wright in her personal injury suit arising out of a motorcycle accident. Ms. Wright had been a passenger on a motorcycle driven by her

friend, Knight, when it collided with a car driven by McLaughlin on May 30, 1978.

The attorneys settled the case on November 6, 1979 for $18,000; Ms. Wright's medical expenses were to be paid from the settlement. On November 10, 1979, the defendant, Mahoney, delivered a signed stipulation of dismissal and a signed release to McLaughlin's attorney. The defendant took the insurance settlement draft for $18,000. The defendant admitted at trial that he had signed Ms. Wright's name on the release and the draft. The draft was paid on November 13, 1979.

Ms. Wright called the defendant in January, 1980 because she had heard nothing from him since she authorized the settlement in late 1979. The defendant told her that McLaughlin's attorneys had refused to honor the settlement and that the case would go to trial.

Ms. Wright continued to believe that the case had not been settled because she had not received or signed release forms and had not received any money. Finally, in June, 1980, Knight contacted Attorney Feller and informed him that Ms. Wright thought that her case had not been settled. Because Feller had known of the November, 1979 settlement and had received his fee, he called the defendant for clarification. The defendant stated that the case was settled but that Ms. Wright had not received her money because he had had financial problems. In July, 1980, Feller informed Ms. Wright that the case had been settled. The defendant gave Feller a $6,000 check for Ms. Wright, which Feller sent to her in late July, 1980. The defendant told Feller he would have the remaining $6,000 due to Ms. Wright[1] by August, 1980. Neither Ms. Wright nor Feller had received the remaining money from the settlement. Although the defendant stated that he had made commitments concerning the medical bills and was negotiating to pay them at a

reduced rate with the remaining settlement money, there was no prior arrangement concerning the bills. The bills have not yet been paid. The defendant testified that he still has $6,000 of Ms. Wright's money.

Basically, the defense theory was that Ms. Wright authorized the defendant to sign her signature on the draft and to invest the money for her because she did not want her boyfriend, Mr. Knight, to use the settlement money. The defendant offered testimony concerning his arrangement with Ms. Wright to keep the settlement money from Knight and concerning the investments the defendant made for Ms. Wright. The arrangement was undocumented. Ms. Wright denied these arrangements between her and the defendant.

At the close of the evidence, the defendant renewed a previous motion for judgment of acquittal. Because the instrument involved was, in fact, a draft and not a check, as alleged in the indictment, the court acquitted as to the Count I charge of Aggravated Forgery, 17–A M.R.S.A. § 702, leaving standing against the defendant a charge of simple Forgery, 17–A M.R.S.A. § 703, on Count I. The justice denied the remainder of the motion. The jury found the defendant guilty of simple forgery and theft.

At a post-trial hearing, the trial justice heard the defendant's motions for judgment of acquittal, new trial, arrest of judgment, and discovery. Extensive testimony was taken concerning the incorrectly dated indictment. Although there had, in fact, been one indictment left unsigned by Foreman Pelletier, the foreman of the defendant's grand jury, the justice ruled that the defective indictment was not the defendant's indictment. The justice concluded that the October 18 date was simply a clerical error and that the defendant's indictment had, in fact, been properly returned in open court. The justice, therefore, denied the motion in arrest of judgment.

---

1. She had agreed to a one-third contingency fee arrangement with Feller. The defendant had, similarly, agreed to be paid one-third of Feller's fee for his assistance with the case. The de-

fendant paid Feller approximately $4,000 in January, 1980. This amount was the total due to Feller as a fee.

The motion for a new trial, based on the interests of justice and on newly discovered evidence, was denied, as were the motions for acquittal, discovery, and mistrial. The justice sentenced the defendant to 16 months, Count II, and 364 days, Count I, concurrent, with $6,000 restitution to Ms. Wright.

## I. Indictment

The defendant challenges several aspects of the indictment.

### A. Incorrect Date

The grand jury that indicted the defendant rose on October 16, 1980. Because the date on the face of the indictment[2] is October 18, 1980 (a Saturday), the defendant alleges the following: his case was never presented to the grand jury, the foreman did not sign the indictment in the presence of the grand jurors, and the foreman did not present it to the presiding justice in open court. See Rule 6(f), M.R.Crim.P.

■ The indictment was date-stamped October 16, 1980 by the clerk's office. The docket entries state that the grand jury returned the indictment on October 16, 1980 and that the defendant's attorney received a true copy of the indictment on October 17, 1980. The foreman of the grand jury testified that he thought that the incorrect date was his error. Two docket clerks and the District Attorney for Cumberland County testified that the one, unsigned indictment from one of the grand juries for which Pelletier was foreman occurred in December, not October. The evidence supported the justice's ruling that the State had proved beyond a reasonable doubt that the October 18 date was a clerical error and the ruling's implied result that the indictment was, in fact, returned by the grand jury on October 16, 1980. That ruling, consequently, disposes of the other alleged Rule 6(f) deficiencies.

**2.** We note that M.R.Crim.P., Rule 6 has no requirement that any date appear on the face of

### B. No Attached Copy of Draft

■ The justice correctly ruled that although the better practice is to attach a copy of the allegedly forged instrument to the indictment, the failure to do so is not necessarily fatally defective. The circumstances of the case are determinative.

An indictment "must inform a reasonably and normally intelligent defendant of the charges (1) to enable him to prepare a defense and, if convicted, (2) to protect him from double jeopardy." State v. Coleman, 452 A.2d 397, 399 (Me.1982). In order to achieve this goal, the Appendix of Forms of the Maine Rules of Criminal Procedure, Form 11, provides for attachment of a copy of the allegedly forged instrument to the indictment. We note, however, that the "forms set forth in the Appendix of Forms, M.R.Crim.P. ... are illustrative and not intended to be an exclusive way of alleging a particular criminal act." State v. Holt, 391 A.2d 822, 824 (Me.1978).

■ Further, we have recognized that "whenever practicable in indictments for forgery, the forged instrument should be set forth according to its tenor." State v. King, 371 A.2d 640, 644 (Me.1977). In King, the language in the indictment was obscure and there was a variance between the described and attached instruments. As a result, the defendant was not informed of the nature of the charge against him and this Court was unable to determine the basis of the defendant's conviction. Neither result obtains here, as the result of the failure to attach a copy of the draft. Even considering the use of the word "check" instead of "draft," the description of the instrument was sufficiently specific to inform the defendant of precisely which instrument he allegedly forged and to inform this Court of the basis of the defendant's conviction.

the indictment.

### C. *"Check" vs. "Draft"*

■ The defendant argues that the designation, in Count I of the indictment, of the written instrument as a *check,* as opposed to a *draft,* produced a fatal variance between the allegation in the indictment and the proof adduced at trial. Essentially, the defendant contends that because the purpose of a draft is to permit the drawer (Providence Washington) to approve payment according to conditions it deems appropriate, the defendant could only have intended to deceive Providence Washington by forging this *draft.* The defendant emphasizes that Count I of the indictment alleges that the defendant intended to deceive the joint payee of the draft, Ms. Wright, by forging what Count I incorrectly labels as a *check.* Further, the defendant states that if he deceived Providence Washington, the funds never became the property of Ms. Wright and, therefore, the defendant never exercised unauthorized control over her property. Finally, the defendant alleges that use of the proper term, draft, would have "opened to the Defense entirely different issues." The defendant has preserved his objection to the sufficiency of the indictment as required under M.R. Crim.P., Rule 12(b)(2).

■ We have no difficulty in disposing of the substantive aspects of the defendant's argument. The defendant is not correct in suggesting that because the drawer of the draft would not have approved payment of the draft if the drawer had known of the forgery, only that party could be deceived.[3] An instrument payable to the order of two or more persons, not in the alternative, "is payable to all of them and may be negotiated, discharged or enforced only by all of them." 11 M.R.S.A. § 3–116 (1964). We think it clear that regardless of the effect of the forgery on any intermediary parties, by falsely endorsing the signature of Ms. Wright, the joint payee on the draft, without her knowledge, in order to receive payment of the draft, the defendant intended to deceive her.

Further, as joint payee, Ms. Wright had rights in the draft and in the funds received by the defendant upon the unauthorized negotiation. Under 17–A M.R.S.A. § 352(4) (1983), " '[p]roperty of another' includes property in which any person or government other than the actor has an interest which the actor is not privileged to infringe...." The defendant, himself, admitted that he still has $6,000 of Ms. Wright's money. We think the jury was warranted in finding that the elements of forgery and theft, with regard to *Ms. Wright,* were proved.

There was, therefore, no variance between the allegations of the indictment and the proof at trial. An indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. M.R.Crim.P., Rule 7(c). As noted, an indictment is sufficient if

> [a] respondent of reasonable and normal intelligence would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.

*State v. Crocker,* 435 A.2d 58, 68 (Me.1981). We have no doubt that the defendant knew at trial exactly what offense the State intended to prove. The defendant's attorney had several photocopies of the draft. Further, after the justice appropriately reduced the charge in Count I, this indictment alleged every material fact forming the elements of the then charged crimes. *Coleman,* 452 A.2d at 399.

■ In addition, this indictment will protect the defendant from future prosecution for the same offense of which he was convicted. Under our broad interpretation of jeopardy under a valid indictment, the defendant cannot be placed in jeopardy for

---

**3.** A draft is generally payable through a bank while a check is commonly payable at a bank. *See* 11 M.R.S.A. §§ 3–120 & 3–121 (1964). The extension of the defendant's argument is that only a bank could be deceived by the forging of a *check.*

*any offense* of which he could have been convicted under that indictment. *State v. Hebert,* 448 A.2d 322, 326 (Me.1982). The present indictment alleged, and it was proved at trial, that the defendant committed forgery and theft with the intent to deceive and to deprive Kristine Wright.[4] Even though the defendant can later be charged with one or more separate offenses, for example, forgery with the intent to deceive *Providence Washington* or theft with the intent to deprive *Providence Washington,* which would be outside the charging scope of the prior indictment, that possibility does not render this indictment insufficient and does not violate double jeopardy principles.

## II. *Motion for Acquittal*

██ Because the forged instrument was a draft, and not a check as alleged in the indictment, the justice granted the defendant's motion to acquit on the Count I charge of Aggravated Forgery, 17–A M.R. S.A. § 702.[5] The justice reduced the Count I charge to Forgery, 17–A M.R.S.A. § 703,[6] and left the Count II Theft charge intact. Although he made no objection at trial to the reduction of the charge, the defendant now challenges the authority of the court to take this action.[7]

The justice's action is permitted under M.R.Crim.P., Rule 31(c) if § 703 Forgery is a lesser included offense of § 702 Aggravated Forgery. *State v. Leeman,* 291 A.2d 709, 710, 711 (Me.1972). Section 703 specifies only a "written instrument"; it would not be possible to forge, with the requisite intent, a check valued in excess of $5,000, as specified in the offense of aggravated forgery, without also forging, with requisite intent, a "written instrument." Section 703 Forgery is, therefore, a lesser included offense of § 702 Aggravated Forgery. *See State v. Giglio,* 441 A.2d 303, 310 (Me.1982); *State v. Luce,* 394 A.2d 770, 773 (Me.1978). The reduction of the Count I charge was proper.

## III. *Motion for Mistrial*

██ The defendant argues that failure to grant a mistrial was error. The defendant states he was prejudiced by the introduction of a letter, written by Feller to Ms. Wright, concerning the settlement of her case, which the State did not provide through discovery. In addition, the defendant states that he was prejudiced by the actions of a State's witness who was allowed to sit at counsel table.

The defendant failed to object to the introduction of the letter and thoroughly examined Feller on recross concerning the letter. With regard to the witness's conduct, the justice ruled that nothing worthy of a mistrial had occurred and that the jury was unable to see the area watched by the defendant. We find no abuse of discretion in denying, on both bases, the motion for a mistrial. *State v. Rheaume,* 131 Me. 260, 261, 160 A. 877, 877 (1932).

---

**4.** This is not a case in which the indictment alleges one offense but the proof factually establishes only commission of a different offense. *See generally State v. Brasslett,* 451 A.2d 890, 897 (Me.1982) (Carter, J., dissenting); *State v. Wing,* 426 A.2d 1375, 1379 (Me.1981) (Carter, J., dissenting).

**5.** Section 702 provides, in pertinent part:

1. A person is guilty of aggravated forgery if, with intent to defraud or deceive another person or government, he falsely makes, completes, endorses or alters a written instrument, or knowingly utters or possesses such an instrument, and the instrument is:

. . . .

E. A *check* whose face value exceeds $5,000.

**6.** Section 703 provides, in pertinent part:

1. A person is guilty of forgery if, with the intent to defraud or deceive another person or government, he:

A. Falsely makes, completes, endorses or alters a *written instrument,* or knowingly utters or possesses such an instrument. . . .

(Emphasis added.)

**7.** The defendant argues incorrectly that theft and forgery constitute a single crime because the forgery was the means by which unauthorized control was exercised. These crimes require proof of different elements; conviction for both is not barred. *State v. Williams,* 395 A.2d 1158, 1167 (Me.1978).

(Emphasis added.)

## IV. *New Trial*

The defendant argues that the justice erred in denying the motion for a new trial based on newly discovered evidence. The evidence consists of a July 28, 1980, letter written by Feller to the defendant. This letter was not in the Wright file given to the defendant by the prosecutor during discovery. In fact, the prosecutor stated that he had never seen the letter. The defendant found the letter in his own files after trial.

In *State v. Estes,* 418 A.2d 1108 (Me. 1980), we stated the five-part showing required to prevail on a motion for a new trial on the ground of newly discovered evidence. The defendant must show

> (1) that the evidence is such as will probably change the result if a new trial is granted, (2) that it has been discovered since the trial, (3) that it could not have been discovered before the trial by the exercise of due diligence, (4) that it is material to the issue, and (5) that it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

*Estes,* 418 A.2d at 1114 (citation omitted).

 In this case, a discussion of the second and third criteria suffices. The defendant has not shown that he could not have discovered the evidence before trial by the exercise of due diligence; the letter was in his own file. Consequently, he has simply rediscovered the letter since trial. The justice quite properly denied the motion for a new trial.

## V. *Jury Instructions*

The defendant argues that the justice erred in denying a motion for a new trial based on improper jury instructions. In the motion, the defendant states that "in reference to Count II the Court stated that if you find the *money* came into the defendant's hands legally you can find him guilty of Count II [Theft] which would be inconsistent with the allegations of Count I [Forgery]." (Emphasis added.)

In fact, the justice nowhere stated "if you find the *money* came into the defendant's hands legally...."[8] Except during the reading of the indictment and in discussing the monetary categories of theft, the justice used only the term "property." The defendant's objection to the justice's use of the word "money" as being inconsistent with the forgery charge was, therefore, unfounded.

In denying the defendant's motion for a new trial, the court stated:

> In my review of the instructions, I note principally that I, after reading them, the indictment never indicated to the Jury anything other than in terms of property after that, in terms of rightfully obtaining property and then wrongfully converting to own use rather than rightfully obtaining money and converting it to own use, and I think the Jury on those instructions could have found rightful receipt of property and subsequent conversion.

 A variance between the charge in an indictment and what occurs at trial becomes material and, possibly, fatal, only when prejudicial to any rights of the defendant. *State v. Nappi,* 369 A.2d 230, 232 (Me.1977). We conclude that the justice's reading of the indictment during the charge precluded any misunderstanding of the instruction. The jury could clearly have found rightful receipt of the *property* and subsequent conversion to *money,* as required by Count II, Theft.

8. The relevant portion of the charge read:

> Exercise unauthorized control—for the purposes of this charge, exercise unauthorized control means that he received property rightfully, either by virtue of his employment or otherwise, and that he embezzled or fraudulently converted that property to his own use, or that he secreted the property with the intent to embezzle or fraudulently convert it.

> In this case—perhaps more simply stated, perhaps not—that means that he obtained rightful possession of the property and then without authority misappropriated that property or concealed it for the purpose of misappropriating that property with a conscious object of misappropriating it.

The entry is
Judgment affirmed.

All concurring.