STATE of Maine

v.

Mark D. VACHON and Richard M. Boisvert.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1984.

Decided Oct. 17, 1984.

Janet T. Mills (orally) Dist. Atty., Auburn, for plaintiff.

Trafton & Matzen, R. Barrie Michelsen (orally), Auburn, for Mark D. Vachon.

Linnell, Choate & Webber, Richard J. O'Brien (orally), Auburn, for Richard M. Boisvert.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In the Superior Court (Androscoggin County) defendants Marc Vachon and Richard Boisvert were tried and found guilty of burglary, Class B, 17–A M.R.S.A. § 401 (1983). On appeal defendants allege error in the Superior Court's denial of their motion for a judgment of acquittal. That motion was based on an allegedly fatal variance between the indictment and the proof at trial. We affirm the convictions.

In the early morning hours of September 26, 1982, the police responded to a report of suspicious activity at a house on Court Street in Auburn. The police apprehended the two defendants who are now appealing (and a third individual whose trial was severed) leaving 478 Court Street, a furnished dwelling owned by Mrs. Muriel Murphy. The rear door of the house had been forced to gain entry.

On October 12, 1982, the Androscoggin County grand jury returned an indictment charging that on or about September 26, 1982, defendants "did enter or surreptitiously remain in a structure, namely, the dwelling place of MURIEL MURPHY, knowing they were not licensed or privileged to do so, with intent to commit theft therein."

At the trial, which began before a jury on September 1, 1983, only the State presented witnesses. The uncontroverted evidence demonstrated that defendants broke into 478 Court Street with the intent to commit a theft. However, cross-examination by defense counsel elicited testimony that, although Mrs. Murphy owned the house at 478 Court Street, the premises had remained unoccupied throughout the period of her ownership, and in fact Mrs. Murphy resided in the house across the street at number 481. At the close of the State's case defendants moved for a judgment of acquittal, on the ground of an impermissible variance between the indictment and the proof at trial. They argued that "the dwelling place of Muriel Murphy" specified in the indictment referred exclusively to 481 Court Street and that the break-in was proved to have occurred at 478 Court Street. The presiding justice denied the motion. Following the justice's ruling, defendants waived their right to complete the trial before the jury and rested without presenting any witnesses. The justice then found defendants guilty of burglary as charged. We find no error below that vitiates those convictions.

Under M.R.Crim.P. 7(c) the "indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The indictment must be drafted so as to "inform a reasonably and normally intelligent defendant of the charges (1) to enable him to prepare a defense and, if convicted, (2) to protect him from double jeopardy." *State v. Mahoney*, 459 A.2d 1073, 1076 (Me.1983) (quoting *State v. Coleman*, 452 A.2d 397, 399 (Me.1982)). *See also State v. Huntley*, 473 A.2d 859, 861 (Me.1984).

Initially, it is important to recognize the difference between 1) a contention that an indictment is *insufficient* to charge an offense, and 2) a contention that there is a *fatal variance* between the charge in the indictment and the proof in evidence at trial. A criminal pleading is insufficient if, from its face, the accused cannot discern the offense with which he is charged. "The language of the formal accusation must be such that the identity of the criminal statute allegedly violated may be readily ascertained; compliance with this constitutional requirement is not achieved if the indictment does not aver all the essential elements of the crime charged." *State v. Pierce*, 438 A.2d 247, 255 (Me.1981). Such constitutional insufficiency is a jurisdictional defect. *Id.* at 256. In the case now before us, however, the indictment was clearly sufficient to charge all the elements of the offense of burglary under 17–A M.R.S.A. § 401(1).[1] The issue here is at most one of variance between the pleading and the proof.

Although it would have been better practice for the State to have been more precise in the present indictment, we conclude that the proof at trial came within the language of the indictment. "The dwelling place of Muriel Murphy" need not be read so narrowly as to be confined to 481 Court Street. The Criminal Code defines "dwelling place" as "a structure

which is *adapted* for overnight accommodation of persons, or sections of any structure similarly adapted." 17–A M.R.S.A. § 2(10) (1983) (emphasis added). There is nothing in that definition which necessarily equates a dwelling place "of," or owned by, Mrs. Murphy with her "domicile" or legal residence. *Cf. Holyoke v. Estate of Holyoke*, 110 Me. 469, 488, 87 A. 40, 49 (1913) ("Domicil is defined as the habitation fixed in any place without any present intention of removing therefrom"). The adoption by this court of simplified rules of criminal pleading, specifically M.R.Crim.P. 7(c), has eliminated the necessity of indictment language that identifies a single structure to the exclusion of all others matching the same description. *See State v. Wing*, 426 A.2d 1375, 1378 (Me.1981) (Roberts, J., concurring). We are thus not required to read the language "the dwelling place of Muriel Murphy" to mean only one dwelling place, when she in fact owned two.

Our reading of the indictment will not expose defendants to any possible double jeopardy. The liberalization of the pleading requirements has resulted in a corresponding expansion of the scope of the protection against double jeopardy. "[W]hen a defendant is placed in jeopardy under a valid indictment, he or she may not thereafter be placed in jeopardy for *any offense* of which he properly could have been convicted under [that] indictment." *State v. Coleman*, 452 A.2d 397, 399 (Me. 1982) (emphasis in original) (quoting *State v. Hebert*, 448 A.2d 322, 326 (Me.1982)). Accordingly, at the moment jeopardy attached at defendants' trial for the break at 478 Court Street, defendants would be protected from being tried again for burglary of any dwelling house owned by Mrs. Murphy.

Even if we were to equate the use of the phrase "the dwelling house of Muriel Murphy" with her domicile and thus find

---

**1.** 17–A M.R.S.A. § 401(1) provides:

A person is guilty of burglary if he enters or surreptitiously remains in a structure, know-

ing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

the pleading and proof at variance, that variance would not be fatal. A variance is fatal only if it is prejudicial to the rights of the defendant. *State v. Mahoney,* 459 A.2d at 1079; *State v. Nappi,* 369 A.2d 230, 232 (Me.1977). We judge the consequences of a pleadings/proof variance by the "harmless error" standard of M.R. Crim.P. 52(a), in a manner similar to the way we review other error. *See State v. King,* 371 A.2d 640, 642 (Me.1977); *State v. Nappi,* 369 A.2d at 231 n. 1. The variance is fatal only if as a result defendants are exposed to unfair surprise at trial or to the risk of double jeopardy. Neither form of prejudice resulted from any variance in the case at bar.

■ It is clear that Vachon and Boisvert were not confused about the location of the crime of burglary or of the legal residence of Mrs. Murphy. They were in no way surprised at trial. Defendants were fully apprised of the exact proof the State was planning to introduce at their trial, including evidence of their apprehension at 478 Court Street. Their cross-examination of the State's witnesses was focused almost exclusively on creating a record to support the allegation of a fatal variance. If defendants had before trial been unsure of the charges pending against them, they could have moved for a bill of particulars under M.R.Crim.P. 16(c)(2). "Although the availability of a bill of particulars will not save a defective indictment, the bill may be used to clarify a constitutionally sufficient yet non-specific indictment." *State v.*

*Coleman,* 452 A.2d at 399 (citation omitted). *See State v. Wing,* 426 A.2d at 1377.

■ In addition, defendants are not exposed to any danger of double jeopardy under this indictment and the proceedings below. In the unlikely event that defendants were reindicted, the indictment in the case at bar, taken along with the evidence at trial as well as this opinion, will protect them by showing that they have already been tried and convicted of breaking and entering 478 Court Street. Thus, even assuming that the indictment is read to refer to 481 Court Street whereas the proof related to 478 Court Street, the variance is not fatal. Defendants have not shown, and cannot show, any prejudice.

In concluding, we emphasize that this appeal would never have arisen if the State had been more careful in preparing the indictment. Nevertheless, no shortcoming in this indictment requires us to vacate defendants' convictions. A different result would be out of harmony with the simplification of criminal pleading effected by M.R.Crim.P. 7(c) and with the harmless error rule prescribed by M.R.Crim.P. 52(a).[2]

The entry is:

Judgments of conviction affirmed.

All concurring.

---

2. *See* 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* §§ 7.3, 52.2 (1967).