STATE of Maine

v.

**Roland R. WHITE.**

Supreme Judicial Court of Maine.

Argued Sept. 30, 1992.

Decided Jan. 4, 1993.

Michael E. Carpenter, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the State.

William Maselli (orally), Auburn, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Roland R. White appeals from the judgment entered in the Superior Court (Cumberland County, *Delahanty, C.J.*) on the jury verdict finding White guilty of intentional or knowing murder in violation of 17–A M.R.S.A. § 201 (1983 & Supp.1991).[1]

---

1. 17–A M.R.S.A. § 201 (1983 & Supp.1991) reads in pertinent part: "A person is guilty of murder if ... he intentionally or knowingly causes the death of another human being."

White contends that the trial court erred by failing to instruct the jury on adequate provocation and reckless manslaughter, admitting his statements to police and hospital personnel, admitting a portrait of the victim while she was alive, and excluding the victim's marital status. He also asserts that he was provided ineffective assistance of counsel and that the record contained insufficient evidence to support his conviction. We affirm the conviction.

Monika Malcolm was married to James Malcolm. While married, Malcolm began dating the defendant and on July 16, 1990, she moved out of the home she shared with her husband and into an apartment with White.

On the evening of July 17, 1990, Malcolm and White met Robert Heald, a former boyfriend of Malcolm, on the street. Heald testified that White became very upset during their conversation. Later that evening, White and Malcolm went to a local bar where White became enraged when Malcolm greeted a male friend with a hug. Several witnesses observed White and Malcolm arguing when they left the bar. A witness testified that because he was concerned for Malcolm's safety he followed the couple on their walk home and that the argument escalated until White was pushing Malcolm and pulling her hair. The witness then lost sight of the two when White led Malcolm into an alley.

The jury heard the following evidence: At 1:52 AM on July 18, 1990, the Portland Police Department received a call from a person who said, "I think I killed my girlfriend." The call was recorded and the voice on the tape was identified at trial as White's by eight of his coworkers. Officer Viola responded to the call. Officer Viola testified that after arriving on the scene, White told him that "he wanted me to take a look at his girlfriend and that she looked pretty bad" and later that he had cut his girlfriend's throat and that "she looks better dead." White identified where police could find Malcolm. The police found Malcolm with her throat slit in the apartment that she shared with White.

On the way to the police station, White asked Officer Viola "if she was all right." Once at the station, Officer Young asked White questions regarding his identification and date of birth and then read him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). White stated that he wanted an attorney. Officer Young did not ask White any further questions. White then requested medical assistance for cuts on his feet.

An FBI investigation revealed that the hairs removed from the cut in White's foot were consistent with those of Malcolm; the glass in his foot was consistent with that from the ceramic plate bearing White's handprint and believed to have been used to cut Malcolm's throat.

White moved to suppress all his statements made to police following his arrest. The trial court held that the statements made by White were voluntary and to the extent that the police sought information on the condition or location of the victim, the statements fell within the public safety exception. The trial court allowed the State to exclude all evidence of Malcolm's marital status and to introduce into evidence a portrait-type photograph of the victim that the State had used during its case-in-chief for identification purposes. The jury found White guilty of intentionally or knowingly killing Monika Malcolm.

■ White argues his trial attorney's failure to raise the defenses of self-defense, intoxication and abnormal condition of the mind and the affirmative defense of adequate provocation manslaughter constitute ineffective assistance of counsel. We will not consider claims of ineffective assistance of counsel raised on direct appeal unless "the record discloses, beyond the possibility of rational disagreement, that the defendant was inadequately represented." *State v. Reynoso*, 604 A.2d 441, 442 (Me.1992). The record before us does not disclose that degree of deficient representation.

■ In preparation for trial, the police copied the recording of the 911 call ("I think I killed my girlfriend") from the orig-

inal 16 inch reel-to-reel tape to a cassette tape. The defendant now argues that the admission of the cassette tape copy of the original 911 recording was in violation of the best evidence rule. M.R.Evid. 1002, 1004. The defendant, however, failed to adequately preserve the best evidence issue.[2] The tape's admission, therefore, is reviewed only for "[o]bvious errors or defects affecting substantial rights." M.R.Crim.P. 52(b); M.R.Evid. 103(d). The trial court's decision to admit in evidence the cassette copy did not result in obvious error.

■ White opposed the State's motion in limine to exclude all references to the victim's marital status on the ground that it was relevant to James Malcolm's being an alternate suspect. The court granted the State's motion to the extent that it applied to the opening statements of the parties, but left its final determination until such time as there was evidence of James Malcolm's involvement. Because at no time during the trial did he proffer any evidence to suggest James Malcolm's involvement in the charged offense, White cannot complain of the court's ruling. Nor do we find the court abused its discretion in the admission in evidence of the portrait of the victim for the identification of her.

■ The defendant argues that the trial court committed reversible error by admitting the statements he made to police officers. We disagree. The trial court decided that to the extent the police sought information on the location of the victim, White's statements were within the public safety exception articulated in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) and that all his other statements were voluntary. These decisions were not clearly erroneous.

■ White now argues that the trial court erred by failing to instruct the jury

regarding the affirmative defense of adequate provocation manslaughter and reckless manslaughter. 17-A M.R.S.A. § 203(1)(A)–(B) (Supp.1992). These objections were not raised before the trial court. Therefore, the defendant must establish, on appeal, that the trial court's failure to so instruct was obvious error resulting in manifest injustice such as to virtually deprive him of a fair trial. *State v. Northup*, 318 A.2d 489, 499 (Me.1974). To determine whether such an injustice occurred, we consider the entire record and decide "the probable effect of the failure to give the instruction in the light of all the evidence." We find that neither the adequate provocation or reckless manslaughter instructions would have had any probable effect in this case based on the evidence introduced at trial.

Viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to find every element of the charged offense beyond a reasonable doubt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.

---

**2.** At trial, the defendant filed a written objection based on lack of authentication pursuant to M.R.Evid. 901(b)(5). At a hearing outside the presence of the jury, the State brought nine witnesses to authenticate the tape. The trial court held that there was sufficient foundation for the introduction of the tape. Later when the

State asked for the tape to be played for the jury, the defendant objected, "No foundation, not the original tape." This objection was not adequate to alert the court or the State that the defendant was raising a best evidence issue. *See Chasse v. Mazerolle*, 580 A.2d 155, 156 (Me. 1990).