**STATE of Maine**

v.

**Richard A. LEAVITT, Jr.**

Supreme Judicial Court of Maine.

Argued March 5, 1993.
Decided May 5, 1993.

Stephanie Anderson, Dist. Atty., Patricia Mador (orally), Asst. Atty. Gen., Portland, for the State.

Richard W. Elliott, Jr. (orally), Elliott & Elliott, Boothbay Harbor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, and RUDMAN, JJ.

COLLINS, Justice.

Richard A. Leavitt, Jr. appeals from the judgments entered on his convictions of aggravated trafficking in marijuana, 17–A M.R.S.A. §§ 1103 and 1105 (1983 & Supp. 1992),[1] and conspiracy to traffic marijuana,[2] 17–A M.R.S.A. §§ 151, 1103 (1983),[3] following a jury trial in the Superior Court (Cumberland County, *Perkins, J.*). Leavitt challenges the trial court's refusal to sanction the State for alleged discovery violations; its jury instructions; its denial of his motion for a mistrial; the variance between the indictment and the proof in evidence; and the State's efforts to prove that he had previously been convicted. Leavitt finally argues that the trial court erred in designating the conspiracy charge as a Class C rather than a Class D crime when the jury found that the conspiracy involved more than two pounds but not more than 20 pounds of marijuana. We affirm Leavitt's convictions; but because we agree that the trial court improperly classified the conspiracy charge, we remand for resentencing.

On January 25, 1990, Allan Snowdeal sold approximately one-quarter pound of marijuana to a police informant. Several days later, on January 29, 1990, Snowdeal sold about five pounds of marijuana to police informants for $10,000 at a motel in Westbrook.[4] At that time, Snowdeal was

---

1. 17–A M.R.S.A. § 1103 (1983 & Supp.1992) provides:

    1. A person is guilty of unlawful trafficking in a scheduled drug if he intentionally or knowingly trafficks in what he knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug, ...
    2. Violation of this section is:
        A. A Class B crime if the drug is ... marijuana in a quantity of 20 pounds of more ...;
        B. A Class C crime if the drug is ... marijuana in a quantity of more than 2 pounds ...;

    *    *    *

    17–A M.R.S.A. § 1105 (1983 & Supp.1992) provides:

    1. A person is guilty of aggravated trafficking or furnishing scheduled drugs if:

    *    *    *

    B. The person violates section 1103 ... and at the time of the offense, the person has been convicted of any offense under this chapter punishable by a term of imprisonment of more than one year....

2. 17–A M.R.S.A. § 151(9) (1983) provides that a conspiracy offense is classified as one grade less serious than the crime which is its object.

3. 17–A M.R.S.A. § 151(1) (1983) provides:

    A person is guilty of conspiracy if, with the intent that conduct be performed which, in fact, would constitute a crime or crimes, he agrees with one or more others to engage in or cause the performance of such conduct.

4. The State introduced a certificate of drug analysis, State's Exhibit # 7, identifying 100 grams, i.e., approximately one-quarter pound, and 4.84 pounds of marijuana. Although Leavitt argues that Exhibit # 7 was not adequately linked with the substance sold by Snowdeal, the testimony at trial was adequate to support a conclusion that the material was the same as in the certificate. John Chase, a Westbrook police detective testified that he delivered the plant material acquired from Snowdeal to the laboratory for testing. Others testified that the substance delivered by Snowdeal at the motel was contained in five individual plastic bags enclosed in a

arrested. Snowdeal then agreed to cooperate with the police by leading them to his supplier, Richard Leavitt.

Following a plan devised by police, Snowdeal called Leavitt at his home to arrange the delivery of the $10,000 he received from the sale and to obtain another five pounds of marijuana. Snowdeal, accompanied by a number of police officers went to Leavitt's home. Snowdeal entered Leavitt's home with the $10,000 in marked bills and left a short time later with a paper bag containing five plastic bags of marijuana.[5] After Snowdeal left Leavitt's home, the police entered Leavitt's home and observed Leavitt counting a large amount of money later determined to be the $10,000 delivered by Snowdeal. The police arrested Leavitt. After obtaining a warrant, police searched Leavitt's home and discovered substantial quantities of marijuana.[6]

Leavitt was indicted on three counts: Count I—aggravated trafficking in marijuana on or about January 24, 1990; Count II—aggravated trafficking in more than two pounds of marijuana on January 29, 1990; Count III—participating in a conspiracy to traffick in more than 20 pounds of marijuana from 1987 to 1990. The jury returned verdicts of not guilty on Count I and guilty on Counts II and III.

## I.

■ At the trial, Scott Durst, an agent with the Bureau of Intergovernmental Drug Enforcement (BIDE), testified that during the search of Leavitt's home, BIDE agents seized what they believed to be marijuana. This substance was delivered to Demers Laboratory for analysis. The State then attempted to introduce a certificate of drug analysis from Demers Laboratory which confirmed the substance was, in fact, marijuana. Leavitt objected and the following colloquy ensued:

[Defense Counsel]: Your Honor, I object to any reference to this evidence. I have not been provided with a drug analysis regarding this marijuana. Clearly I can't ask for the chemist if I don't know there's a drug analysis and, therefore, there's something to request, ... So I ask it not to be referred to, ask for a continuance so I can get appropriate materials that should have been provided and I can look into it and—

[State's Attorney]: Your Honor, I did not receive a copy of the lab analysis, that was an oversight. It's—I can give him a copy right now.

[Defense Counsel]: ... I never received this [certificate].

THE COURT: Well I will give you the time to take a look at it. If you can set forth on the record some basis of prejudice to your client as a result of not having that chemical analysis then we'll deal with it.

After a fifteen-minute recess, the State proceeded with its case and Leavitt made no mention of the certificate until the State again attempted to introduce the certificate. At that time, Leavitt stated, "Your honor, I would reserve my objection at this time pending further cross-examination." Leavitt made no mention of the certificate during cross-examination or at any other time.

Leavitt contends, and the State concedes,[7] that the State's failure to provide the certificate prior to trial was a violation of the automatic discovery provisions of M.R.Crim.P. 16(a) requiring the attorney for the State to automatically furnish to the defendant within a reasonable time "[a]

large plastic trash bag. The certificate lists the 4.84 pounds of marijuana as being contained in a "[t]rash bag [with] 5 zip lock bags." The certificate also identified Allan Snowdeal as the subject as well as his case number.

**5.** The State introduced an additional certificate of drug analysis, State's Exhibit # 14, identifying this material as marijuana. The trial court's

admission of this certificate into evidence is discussed in section I.

**6.** Also identified as marijuana in State's Exhibit # 14.

**7.** The State asserted in its brief, "While [the State's good faith] does not excuse *the violation,* it should be considered in determining the appropriate sanction, if any." (Emphasis added).

statement describing any ... evidence intended to be used against the defendant which ... [w]as obtained as a result of a search and seizure." M.R.Crim.P. 16(a)(1)(A)(i). Although it is not clear when the attorney obtained the certificate, it is troubling that the results of tests performed on February 8, 1990 were not provided to or requested by the State until some time at or immediately prior to the trial which began on August 16, 1990. "We have held repeatedly that Rule 16(a) requires a diligent inquiry by prosecutors to discover whether automatically discoverable information exists." *State v. Rich,* 592 A.2d 1085, 1088 (Me.1991). We are further concerned that the State could as "an oversight" neglect to provide the certificate to Leavitt immediately after obtaining it. Failure to comply with Rule 16(a) may result in the trial court's excluding the specified evidence from evidence. *See* M.R.Crim.P. 16(d).

A trial court's decision, however, not to impose sanctions for discovery violations cannot be characterized as either an abuse of discretion or an error of law unless the defendant has "show[n] that he was in fact prejudiced by the discovery violation despite the court's effort to nullify or minimize its consequences ... and that the prejudice rose to the level of depriving him of a fair trial." *State v. Caulk,* 543 A.2d 1366, 1370 (Me.1988) (quoting *State v. Reeves,* 499 A.2d 130, 133 (Me.1985)).

Leavitt now argues that he was prejudiced by the State's late disclosure of the certificate because he was not able to request a qualified expert ten days prior to trial.[8] Despite the trial court's express invitation to "set forth on the record some basis of prejudice," Leavitt failed to articulate any prejudice suffered because of the

State's noncompliance. Leavitt neither suggested that he would have called his own expert had he known about the certificate in advance nor did he express the need for a continuance in order to do so. *See State v. Tibbetts,* 604 A.2d 20, 23 (Me.1992). Leavitt also failed to request that the State be required to produce a qualified witness.[9] Based on the record before us, we find that Leavitt failed to establish that he suffered any prejudice to the level of depriving him of a fair trial by the trial court's refusal to exclude the certificate as a discovery sanction.

## II.

During deliberations, the jury asked the court whether it could consider the incident at the motel during which Allan Snowdeal sold five pounds of marijuana to police informants. The trial court responded:

> You have to take the evidence as it's offered to you in its totality as it pertains to allegations making up the second offense ...

Leavitt did not object to the trial court's instruction at that time. He now argues that there was "no evidence whatsoever" that the substance sold by Snowdeal in the motel incident was actually marijuana and that the trial court's instructions were therefore erroneous. Because Leavitt did not preserve his challenge, he must now establish that the trial court's instructions were obviously erroneous and resulted in manifest injustice such as to virtually deprive him of a fair trial. *State v. White,* 619 A.2d 92, 94 (Me.1993). When viewing the instructions in their entirety as well as the evidence before us, *see supra* note 3, we find no such error. *Id.*

---

**8.** 17–A M.R.S.A. § 1112 (1983) provides:

A laboratory which receives a drug or substance from a law enforcement officer ... for analysis as a scheduled drug shall, if it is capable of so doing, analyze the same as requested, and shall issue a certificate stating the results of such analysis. Such certificate ... shall be admissible in evidence ... and shall be prima facie evidence that the composition, quality and quantity of the drug or substance are as stated therein, unless with 10

days written notice to the prosecution, the defendant requests that a qualified witness testify as to such composition, quality and quantity ...

**9.** Such a request would very likely have been granted despite the requirement of 17–A M.R.S.A. § 1112 (1983) that such requests be made ten days prior to trial since in this case the State's own actions prevented a more timely request.

## III.

■ On the morning of the last day of trial, two jurors observed Leavitt arriving at the courthouse in shackles and handcuffs. That evening when the jury concluded deliberations for the day, still undecided, two other jurors saw Leavitt leaving the courthouse in full custody. Although Leavitt was aware of the second viewing, he did not bring it to the trial court's attention until after the jury returned its verdicts. At that time he moved for a mistrial. The trial court denied Leavitt's motion for a mistrial but did agree to question the jurors about the incidents. The court asked each juror who had observed Leavitt in custody whether this affected his or her ability to be fair and objective; each responded negatively.

Leavitt argues that the trial court committed reversible error in denying his motion for a mistrial. We disagree. A trial court has broad discretion in determining whether there should be a mistrial. *State v. Hinds*, 485 A.2d 231, 235 (Me.1984). We have further held that:

> A brief and inadvertent exposure to jurors of a defendant in handcuffs, without more, is not so inherently prejudicial as to require a mistrial, especially when, as here, the defendant is afforded an opportunity for jury voir dire or precautionary instruction.

10. 15 M.R.S.A. § 757(3) (Supp.1992) provides: If the name and date of birth of the person charged with the current principal offense are the same as those of the person who has been convicted or adjudicated of the prior offense, it shall be presumed that the person charged with the current principal offense is the same person convicted or adjudicated of the prior offense.

11. When the State moved to admit the conviction record, the following colloquy took place:
   [State's Attorney]: ... [This exhibit is] a Judgment and Commitment for Richard Leavitt, Jr. [The] State is moving for admission at this time.

   [Defense Counsel]: ... I object to its admissibility as being irrelevant at this time.
   THE COURT: I am afraid I misunderstand. Do you acknowledge that as being a record of the Clerk of Court's Office concerning your client?

*State v. White*, 456 A.2d 13, 15–16 (Me. 1983). Because Leavitt did not bring this incident to the trial court's attention until after the jury's verdict, it was impossible for the court to provide a precautionary instruction or a pre-verdict jury *voir dire*. We find no abuse of discretion in the trial court's denial of Leavitt's motion for a mistrial.

## IV.

■ In order to establish that Leavitt had been previously convicted of a drug trafficking charge and was, therefore, guilty of aggravated trafficking, 17-A M.R.S.A. § 1105, the State introduced a conviction record of Richard Leavitt, Jr. whose date of birth was listed as September 23, 1957. Leavitt testified that his name was Richard Leavitt and that his date of birth was September 23, 1957.[10] Leavitt also stipulated that the record was "an attested copy from the Clerk's Office of a Conviction of trafficking of Mr. Leavitt."[11] The jury found that Leavitt had been previously convicted. Leavitt now argues the State failed to adequately identify him as the person named in the conviction record. We find that, in light of Leavitt's stipulation, the evidence was sufficient to support the jury's finding that the identity of the person named in the record was in fact the defendant.

   [Defense Counsel]: I stipulate that it is an attested copy from the Clerk of Court's, yes.
   THE COURT: Of the judgment and conviction concerning your client, Richard A. Leavitt, Jr.[?]
   [Defense Counsel]: Stipulating it's an attested copy. That is as far as defense counsel will go as to stipulating to the document.
   [State's Attorney]: Your Honor if the Court wishes I can call the Clerk from the Cumberland County Superior Court.
   THE COURT: I guess you have to.
   [Defense Counsel]: That may not be necessary if I can speak to [the State's attorney] a minute.

   [Defense Counsel]: I, defense counsel, will stipulate that is an attested copy from the Clerk's Office of a Conviction of trafficking of Mr. Leavitt.

## V.

Leavitt challenges the indictment on two grounds. First, Leavitt contends that the indictment was fatally flawed because Count III charged him with a conspiracy to traffick in more than 20 pounds of marijuana, but the jury specifically found that the conspiracy involved more than two pounds but *less than 20* pounds of marijuana. Leavitt argues that this discrepancy created a fatal flaw in the indictment.

When a variance occurs between the allegations of an indictment and the proof presented at trial, such a variance is fatal only if it affects the substantial rights of the defendant. Cluchey & Seitzinger, 1 *Maine Criminal Practice* § 7.9 at III–45 (citing *State v. Vachon*, 482 A.2d 864, 867 (Me.1984)). Cluchey and Seitzinger continue:

> So long as the indictment fulfills its function by advising the defendant adequately of the offense so the defendant may prepare a defense, avoid surprise at trial, and defend against double jeopardy, the variance is immaterial and not fatal to the prosecution.

*Id.* (citing *State v. Vachon*, 482 A.2d at 866–67; *State v. Wing*, 426 A.2d 1375, 1376 (Me.1981); *State v. Nappi*, 369 A.2d 230, 232 (Me.1977); *State v. Kimball*, 359 A.2d 305, 307 (Me.1976)). Leavitt did not establish that he was unfairly surprised or otherwise prejudiced by the variance between the indictment and the proof, therefore, we find the variance between the pleading and proof was not fatal.

Second, Leavitt argues that the indictment contained a second fatal flaw because it stated that Leavitt had been previously convicted of trafficking in marijuana "on or about May 15, *1987*" when the date listed by the record of conviction was "May 15, *1986*." (Emphasis added). The time of the prior conviction is not an essential element of the offense. *See* 17–A M.R.S.A. § 1105(1)(B), *supra* note 1. This variance is also not fatal.

## VI.

Leavitt argues, and the State concedes, that because the jury specifically found the conspiracy charge involved less than 20 pounds of marijuana, the trial court should have classified the conspiracy conviction as a Class D crime rather than a Class C crime. We agree. Trafficking in more than 20 pounds of marijuana is classified as a Class B crime. *See* 17–A M.R.S.A. § 1103(2)(A) (1983 & Supp.1992). Trafficking in less than 20 pounds but more than two pounds of marijuana, however, is classified as a Class C crime. *See* 17–A M.R.S.A. § 1103(2)(B) (1983 & Supp. 1992). Because conspiracy is an offense classified as one grade less serious than the classification of the most serious crime which is its object, 17–A M.R.S.A. § 151(9); Leavitt's conspiracy conviction should have been classified as a Class D crime. Because the trial court's error may have influenced the sentencing proceedings on the underlying trafficking conviction, we remand for resentencing on both convictions.

The entry is:

Judgments affirmed. Remanded for resentencing on all counts.

All concurring.