**Robert L. HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–597.**

District of Columbia Court of Appeals.

Argued Jan. 29, 1992.
Decided Feb. 14, 1992.

Herbert A. Wilfert, Washington, D.C., appointed by this court, for appellant.

Robin C. Ashton, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before FERREN, STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

In 1982, a distinct criminal offense of shoplifting was created in the District of Columbia, which is applicable to "any personal property of another that is offered for sale." D.C.Code § 22–3813 (1989). The principal issue before us is whether this statute applies to merchandise contained in a storeroom off the customer sales area, which is used to replenish stock in the sales area or which is available as a source of sizes, colors, or the like not on display in the sales area. We hold that the statute does apply in these circumstances and hence affirm appellant's conviction.

Appellant was charged with a violation of D.C.Code § 22–3813 (1989) ("Shoplifting"), a misdemeanor with a maximum penalty of not more than $300 or ninety days imprisonment or both.[1] At the bench trial, Arthur Parks, a security guard, testified that he observed appellant enter the Woodward and Lothrop department store in downtown Washington through the first floor 10th Street entrance and head directly down to the basement level. Parks followed appellant as he walked through a pair of double doors marked "Restricted Area"[2] and proceeded back to a stockroom where children's clothing was temporarily stored on racks. There, appellant picked

1. The section in its entirety reads:

(a) A person commits the offense of shoplifting if, with intent to appropriate without complete payment any personal property of another that is offered for sale or with intent to defraud the owner of the value of the property, that person:

(1) Knowingly conceals or takes possession of any such property;

(2) Knowingly removes or alters the price tag, serial number, or other identification mark that is imprinted on or attached to such property; or

(3) Knowingly transfers any such property from the container in which it is displayed or packaged to any other display container or sales package.

(b) Any person convicted of shoplifting shall be fined not more than $300 or imprisoned for not more than 90 days, or both.

(c) It is not an offense to attempt to commit the offense described in this section.

(d) A person who offers tangible personal property for sale to the public, or an employee or agent of such a person, who detains or causes the arrest of a person in a place where the property is offered for sale shall not be held liable for detention, false imprisonment, malicious prosecution, defamation, or false arrest, in any proceeding arising out of such detention or arrest, if:

(1) The person detaining or causing the arrest had, at the time thereof, probable cause to believe that the person detained or arrested had committed in that person's presence, an offense described in this section;

(2) The manner of the detention or arrest was reasonable;

(3) Law enforcement authorities were notified within a reasonable time; and

(4) The person detained or arrested was released within a reasonable time of the detention or arrest, or was surrendered to law enforcement authorities within a reasonable time.

2. An area behind the doors also contained a sign alerting persons entering the area that it was restricted and that violators would be prosecuted if caught in the area.

up a shopping bag in the storeroom and began stuffing the bag with clothes from the rack. At that point, a backup officer summoned by Parks had arrived and the two of them confronted appellant and subsequently took him into custody.[3] After testimony, appellant moved for a judgment of acquittal on the ground that the clothing in question was not "offered for sale" within the meaning of § 22–3813. He renews this argument on appeal.

Prior to 1982, no special provision covered shoplifting; such offenses were typically prosecuted as larceny or attempted larceny. COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, Bill No. 4–133 at 12 (June 1, 1982) (hereinafter REPORT); EXTENSION OF COMMENTS ON BILL NO. 4–133, at 23 (July 20, 1982) (submitted by David A. Clarke). As part of its major overhaul of the laws relating to theft and like offenses contained in the Theft and White Collar Crimes Act of 1982, the Council of the District of Columbia created a distinct offense of shoplifting. In doing so, it noted that the "economic losses due to shoplifting, bad checks and credit card fraud are substantial." It also cited a study showing an annual loss in 1980–81 to "retail stores" of $486,250,000 due to shoplifting, and noted that the "losses are in turn incurred by the public." It cited an estimate that each adult in the metropolitan area is charged an additional $300 per year for purchases in order to offset the retailers' losses due to shoplifting, bad checks, and credit card fraud, with by far the greatest proportion attributable to shoplifting. REPORT at 5–6.

Nowhere does the legislative history specifically address the intended meaning of property "offered for sale." Appellant would apply the statute as if it read "displayed for sale," that is, the merchandise must be "on display in the public areas of a store, with retail price tags affixed, attended to by sales clerks and cashiers hopefully eager to facilitate a purchase."[4] The government concentrates instead on the nature of the property at issue and asserts that the term "offered for sale" does not require that the merchandise be displayed in a particular place, but only that it be held for purposes of sale.

Here, the testimony was quite specific about the use of the clothing in the stockroom. "The stockroom is where the clothes are hung up on the racks. So when a salesperson goes back there, you know, they need a certain amount or whatever the case is, they go get it and bring it out.... What is it kept in the stockroom for? It's just like if you have 30 items and you can only get 20 on the floor, then they keep the ten back in the stockroom just in case they sell out so they can go back there and get more."

Thus, the clothing here was considered part of the overall inventory in the store subject to immediate sale. It is, of course, also a well-known phenomenon that in some retail establishments, such as shoe stores, the full stock of goods offered for sale is not kept on actual display in the main customer area, but rather the salesperson retrieves from a back storage area the necessary size, style, or color desired by the customer.

■ In light of the breadth of the problem which the Council said it was attempting to address, we construe the statute as extending at least to merchandise held in the manner and for the purposes here; viz., in reasonably close proximity to the customer area and intended for prompt availability to customers when and as needed. We note also that the shoplifting statute is one providing a relatively modest penalty, considerably below that of some possible alternative offenses, such as theft.

---

3. Appellant had no cash or credit cards on him at the time of his detention.

4. Appellant refers also to subsection (d) of the statute, which speaks of arrests in a place where the property is "offered for sale," but we fail to see how the use of that same phrase in subsection (d) helps appellant. On the contrary, it would support a less narrow reading of the phrase, to effectuate the Council's purpose to assist retailers in protecting against merchandise loss. Further, one of the general aims of its 1982 theft legislation was to rid the D.C.Code of "unnecessary technical distinctions which only hamper law enforcement efforts." REPORT at 4.

D.C.Code § 22–3812 (1989).[5] Thus, a rule giving a somewhat expansive definition to the offense may in fact provide greater leniency to accuseds in appellant's position.[6]

*Affirmed.*

---

**5.** Theft in the first degree, applying to property in excess of $250, carries a maximum penalty of $5,000 and/or 10 years imprisonment; theft in the second degree, a penalty of $1,000 and/or one year. Taking property without right, D.C.Code § 22–3816, carries a maximum penalty of $300 and/or 90 days imprisonment, the same as shoplifting. An attempt crime is punishable by a fine not exceeding $1,000 and/or one year imprisonment. D.C.Code § 22–103. The statute specifically bars any crime of "attempted shoplifting." However, "the fact that the theft was completed is not intended to bar prosecution under this [shoplifting] statute." Extension of Comments on Bill No. 4–133, *supra,* at 24.

**6.** Appellant also makes a meritless argument that the trial court abused its discretion in denying his motion for a new trial under Rule 33. *See Townsend v. United States,* 549 A.2d 724, 726 (D.C.1988). He asserted that a "reinspection of the department store by his counsel after the bench trial" revealed that certain exhibits were factually erroneous and that a security guard could not have seen what he purported to have seen. He also asserted that his counsel was surprised by his testimony that the security guard was not the one he encountered in the incident. In effect, these are assertions of newly discovered evidence, but he fails to meet the well-settled criterion that he must demonstrate "diligence in [his] efforts to procure the evidence." *Smith v. United States,* 466 A.2d 429, 432 (D.C.1983) (citing *Heard v. United States,* 245 A.2d 125, 126 (D.C.1968)). Appellant cites to *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir.1928), but that case is inapposite because it involves the sworn recantation of a witness's testimony after trial.